**In re Application of Natalie K. SHE-MONSKY for Admission to the State Bar of South Dakota.**

**No. 14953.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 13, 1985.

Decided Dec. 31, 1985.

---

Thomas Harmon, Asst. Atty. Gen., Pierre, for State Board of Bar Examiners;

Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Carleton R. Hoy of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for applicant; Drake A. Titze, Legal Intern, Davenport, Evans, Hurwitz & Smith, Sioux Falls, on brief.

MORGAN, Justice.

Petitioner, Major Natalie Shemonsky, brings a petition asking the court to review a decision of the Board of Bar Examiners of South Dakota (Board) denying her admission to practice law in South Dakota. *See* SDCL 16–16–16. We affirm the decision of the Board of Bar Examiners.

In May of 1984, Petitioner graduated from the University of South Dakota School of Law. Pursuant to Army orders, Petitioner reported to Washington, D.C., shortly after graduation. According to Petitioner, these events changed her plans to sit for the Multistate Bar Examination (MBE) in South Dakota in July 1984. She instead made application for admission and sat for the July MBE in the District of Columbia.*

At the time Petitioner took the MBE, the passing score in South Dakota was 125; the passing score in the District of Columbia was 133. In November 1984, after learning that her score was 126, Petitioner wrote the Board of Bar Examiners in South Dakota requesting that the Board accept a transfer of her scores, and grant admission to practice law in South Dakota. The Board subsequently refused Petitioner's request, based upon the fact that her score (126) did not meet South Dakota requirements at the time she applied for admission. Between July 1984, when Petitioner took the MBE, and December 1984, when she requested admission, the Board had raised the passing score in the MBE in South Dakota to 130.

Petitioner seeks an order from this court admitting her to practice in South Dakota based upon the unique circumstances in her

---

* Petitioner could have made her application in South Dakota and actually sat for the MBE in the District, in which case the 126 score would have sufficed.

case, in that her test results were measured by a scale adopted after she sat for the MBE.

 The ability to receive or reject an applicant for the bar is inherently a function of the judicial system. This court has the authority to oversee all applications for admission. *In re Hosford,* 62 S.D. 374, 252 N.W. 843 (1934); *Schware v. Board of Law Examiners,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); SDCL 16–16–1. In reviewing a request for admission, however, this court may not violate constitutional principles. *S.Ct. of New Hampshire v. Piper,* 470 U.S. ——, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985) (the practice of law is a fundamental right; therefore the Privileges and Immunities Clause of the Constitution precludes discrimination based upon residency); *In re Haukebo,* 352 N.W.2d 752 (Minn.1984) (an applicant cannot be denied admission for reasons that contravene due process or equal protection).

Under SDCL 16–16–16, this court is the final arbiter of decisions of the Board. As such, the court can accept or reject the Board's conclusion within the constitutional limitations noted above. Petitioner's lone constitutional claim is that she was denied due process and equal protection of the laws by not being admitted to the bar because her MBE results were measured by a subsequently adopted standard.

 Petitioner relies primarily upon *Gonzales-Blanco v. Clayton,* 110 Ill. App.3d 197, 65 Ill.Dec. 794, 441 N.E.2d 1308 (1982), for the proposition that the Board cannot retroactively apply a standard to her. *Clayton* is distinguishable. In *Clayton,* the court found the retroactive application improper because Gonzales-Blanco's application for a medical residency program had been received *before* the new regulations took effect, but was not acted upon until after the more stringent regulation became effective. Such is not the case here. Petitioner did not apply for admission to the South Dakota Bar until after the higher score became effective. Ipso facto, her application could not be acted on

until it was received, at which time a passing score in South Dakota was 130.

In a nutshell, Petitioner has shown no authority which requires this court to admit her. Indeed, the matter of transfer of an MBE score from another jurisdiction is within the court's discretion. Board of Bar Examiners Reg. 4; SDCL 16–16–16; *In re Fischer,* 425 A.2d 601 (Del.1981). "The system we have now may not be perfect and may be improved upon, but until we have an improved system we should not abandon this one." *Dinger v. State Bar Bd.,* 312 N.W.2d 15, 18 (N.D.1981). "A procedure is reasonable as long as it is not arbitrary and capricious." *Application of Hansen,* 275 N.W.2d 790, 793 (Minn.1978). The Board has interpreted its rules to provide for the necessary test score at time of application. This court feels no unique circumstances exist, and there is no constitutional reason to reverse the Board's decision and admit Petitioner.

FOSHEIM, C.J., HENDERSON, J., and WUEST, Circuit Judge, acting as a Supreme Court Justice, concur.

HERTZ, Circuit Judge, acting as a Supreme Court Justice, not participating.