In the Matter of the Application of Harold Kearl **WIDDISON** for Review of the Decision Of the Board of Bar Examiners.

No. 19199.

Supreme Court of South Dakota.

Argued Sept. 12, 1995.

Decided Nov. 8, 1995.

Mark Barnett, Atty. Gen., Craig M. Eichstadt, Asst. Atty. Gen., Pierre, for Board of Bar Examiners.

R. Scott Rhinehart, N. Sioux City, for applicant Widdison.

GILBERTSON, Justice.

On October 19, 1994, the South Dakota Board of Bar Examiners held a formal hearing to determine whether Harold K. Widdison had demonstrated good moral character necessary to be admitted to the practice of law in South Dakota. Widdison appeals the Board's order denying his admission to practice law in this state and denying his motion for a new hearing. We affirm.

### FACTS AND PROCEDURE

Harold K. Widdison matriculated at the University of South Dakota School of Law in its summer screener program in 1991.[1] Following successful completion of his coursework in this program, he was invited to join the class beginning that fall. During Widdison's first year of law school he was elected president of his class and joined Phi Alpha Delta, a legal fraternity. He partnered with a fellow law student, D.S., in the first-year Appellate Advocacy course. This association was to continue his second and third years of law school as the two students collaborated in study groups and note-taking in several classes.

---

1. Previous to his law school attendance, Widdison had obtained an undergraduate degree in criminal justice from the University of Northern Arizona and had worked as a certified paralegal.

In the fall of 1992, during Widdison's second year of law school, he wrote and submitted a casenote for law review publication. It was discovered by the editor-in-chief of the law review that Widdison had included in his article material from secondary sources which he had failed to cite.[2] This was brought to the attention of the law review's faculty advisor who, following an independent investigation, agreed.[3] The faculty advisor spoke to Widdison who denied any dishonest intentions in failing to credit his source material. Although the advisor indicated to Widdison his intention to turn the matter over to the Law School Disciplinary Committee for further action, the advisor changed his mind and ultimately sent Widdison a strongly worded letter admonishing Widdison for his behavior and advising him not to get into a similar situation in the future. The faculty advisor also assigned Widdison a failing grade in the law review course with zero credit. Widdison did not object nor appeal the faculty advisor's actions.

During Widdison's third year and final semester of law school[4] he, along with D.S. and other second- and third-year students, enrolled in the school's Worker's Compensation course. The final examination in this course consisted of ten questions handed out in the first few weeks of the semester. The students were given the entire semester to work on completing their examination answers.

The instructions regarding completion of the exam, both written in the syllabus handed out the first week of class and given orally by the professor in class on three occasions, were that students were not to consult with one another when working on the questions.[5] The professor reminded her students this was a final examination and was to be treated as such pursuant to the USD School of Law Honor Code, that is, students' answers to the ten questions were to be their own work and not the result of group effort. At the regular final examination administration period at the end of the semester, the Law School examination proctor informed the students which three of the ten prepared answers were to be handed in for grading and course credit.

During the grading process, the Worker's Compensation professor discovered two students' examination answers—on all three of the collected answers—were strikingly similar, almost verbatim copies of one another. She had no knowledge of the students' names at this time as all answers were handed in by examination number rather than name. At this point, the professor withheld assigning a grade to either exam until the Law School Disciplinary Committee met to discern how the answers came to be so similar and if one of the students claimed to be an innocent victim.[6] This action was taken following the

2. Specifically, the law review faculty advisor testified at the October 1994 hearing that six pages of Widdison's law review manuscript matched an earlier South Dakota Law Review article written by Michael Marlow. The advisor testified it was a verbatim match encompassing both textual material and footnotes. There was no citation or other notation indicating this was Marlow's original material.

3. Part of this investigation involved Widdison turning over to the faculty advisor a box containing copies of all of the research materials and notes Widdison said he used in preparing his law review article. Although Widdison informed the Board of Bar Examiners at the October 1994 hearing, and this Court, that he turned over all his research materials, the advisor stated he could not recall the Marlow article being included in the box. The faculty advisor's independent search turned up two additional articles quoted but not cited by Widdison.

4. Widdison had taken coursework the previous two summers so that he would acquire sufficient credits to graduate in December 1993.

5. The instructions on the course syllabus read as follows: "CAVEAT: You must keep in mind at all times that this *is* a final examination. While you may use all written and computer resources available in the library, you may not discuss the questions or the test with any other person, whether student, faculty, attorney, or anyone else. Failure to adhere to this rule is an honors violation." (emphasis in original).

6. Widdison hired attorney James McCulloch to represent him in this matter. Widdison did not, however, inform his attorney about his law review plagiarism incident until McCulloch learned of the incident from another source after the disciplinary committee hearing was completed. At the start of the disciplinary committee hearing, Widdison requested and agreed to sign a stipulation of certain facts, one of which included the statement, "[D.S.] and Harold are honorable students who have never previously had any alle-

professor's meeting with, first the Associate Dean and later, the Dean of the Law School to decide what to do about the situation. Following the Disciplinary Committee's hearing, and learning that neither student claimed to be a victim of the other, the professor assigned a failing grade to each examination with no credit given for the course.

Widdison initially had been granted a provisional diploma from the Law School during its December graduation ceremony. He applied, and sat for, the February 1994 bar examination. The Board of Bar Examiners (Board) received a dean's certificate of study signed by Dean Barry Vickrey of the Law School but with the caveat that Dean Vickrey could not attest to Widdison's good moral character. By attachments to the certificate, Vickrey explained the nature and outcome of the Worker's Compensation final examination incident.[7]

Upon learning he did not have sufficient credit hours to graduate because of the failing grade received in the Worker's Compensation course, Widdison filed a grievance against the Worker's Compensation professor to attempt to have his grade changed so that he could meet the ninety credit hour graduation requirement. At some point, Widdison registered for a summer school course to attain the additional two hours of credit he needed to graduate. He successfully completed his summer course and was awarded a second diploma from the Law School in August 1994.

Widdison learned that he had passed the South Dakota bar examination but would not be admitted for practice until the matter of his moral character was resolved. To this end, a character and fitness hearing was held

October 19, 1994 to hear evidence of Widdison's moral character as well as the circumstances surrounding the two instances of alleged misconduct involving the law review article and the final examination. In addition, the Board was concerned that Widdison had failed to disclose to the Board the existence of the law review matter on his application for admission.[8]

The result of this hearing was the Board's order, issued December 1994, denying Widdison's admission to practice after determining Widdison had failed to demonstrate, by clear and convincing evidence, good moral character necessary for admission to the bar. Widdison moved for a new hearing based upon new evidence; an anonymous letter had been sent him claiming information surrounding the Worker's Compensation final examination incident. This motion was denied. Widdison now appeals to this court raising five issues:

1) That the Board erred in ignoring evidence that another student copied his examination answers;

2) That the Board erred in allowing testimony regarding his law review article;

3) That the Board erred in allowing Dean Vickrey to remain in the hearing room;

4) That the Board abused its discretion in denying Widdison's motion for a new hearing; and,

5) That the Board erred in condoning the actions of its expert witness, Dean Vickrey, following the hearing.

## STANDARD OF REVIEW

This appeal is brought pursuant to SDCL 16–16–16.[9] This statute provides a request

---

gations of misconduct during their three years at the Universdity [sic] of South Dakota Law School." As Widdison was out of town the day the stipulation was due, his attorney signed on his behalf, with Widdison's agreement. McCulloch had no knowledge at this time of the law review incident.

**7.** Dean Vickrey was also unaware of the law review incident when he signed the dean's certificate.

**8.** The record reflects the Board of Bar Examiners learned of the law review incident when it

received a letter from the law review faculty advisor following the advisor's awareness of the Worker's Compensation disciplinary matter involving allegations of plagiarism.

**9.** This matter is not a contested case under SDCL ch. 1–26, since the Unified Judicial System is specifically excluded as an agency under that chapter.

for review by this Court of the Board of Bar Examiners' decision may be made within six months of that decision. Widdison timely filed his Notice of Review May 25, 1995 and amended said notice June 1, 1995.

■ "The ability to receive or reject an applicant for the bar is inherently a function of the judicial system. This court has the authority to oversee all applications for admission." *In re Shemonsky*, 379 N.W.2d 316, 318 (S.D.1985). As long ago as 1928, we noted:

'the right to practice law' is not in any proper sense of the word a 'right' at all, but rather a matter of license and high privilege. Certainly, it is in no sense an absolute right. It is in the nature of a franchise to the enjoyment of which no one is admitted as a matter of right, but only upon proof of fitness and qualifications which must be maintained if the privilege is to continue in enjoyment.

*In re Egan*, 52 S.D. 394, 398, 218 N.W. 1, 2–3 (1928).

■ In *Shemonsky* we held that under SDCL 16–16–16, this Court is the final arbiter of the decisions of the Board of Bar Examiners, and as such, we can accept or reject the Board's conclusion. *Shemonsky*, 379 N.W.2d at 318. SDCL 16–16–16 provides this Court will "conduct such investigation as it deems necessary to a decision as to the qualifications of the applicant for admission." We interpret this statute to require that we perform a de novo review of both questions of law and fact in all bar admission cases. Nevertheless, we will carefully consider the recommendations of the Board which had the opportunity to hear live witnesses. *In re Discipline of Stanton*, 446 N.W.2d 33, 35 (S.D.1989).

■ As noted, Widdison raises five separate issues in his brief to this Court. However, Widdison has waived his argument involving testimony regarding his law review article by failing to cite supporting authority as required by SDCL 15–26A–60(6). Failure to cite supporting authority in an appellate brief violates SDCL 15–26A60(6) and waives the issue before this Court. *Kostel Funeral Home v. Duke Tufty Co.*, 393 N.W.2d 449, 452 (S.D.1986). Widdison's waiver of this issue leaves for our consideration the issues involving evidence of another student's copying his examination, the Board's allowing Dean Vickrey to remain in the hearing room, denying Widdison's motion for a new hearing, and an issue characterized by Widdison as condoning actions taken by Dean Vickrey following conclusion of the October 1994 hearing.

## ISSUE I

*Whether the Board erred by failing to find that another student had copied Widdison's answers to the worker's compensation final examination?*

■ Widdison advances this argument through a selective sifting of the facts presented to the Board. However, in its findings, the Board stated that there was no satisfactory explanation for the similarities of the answers of either Widdison or D.S. The Board correctly noted that it was up to Widdison to establish that he was of good moral character and, based on the state of the entire record, he had failed in that burden of proof as no satisfactory explanation for the identical content of the answers was produced.

Our review of the record indicates that Widdison's evidence that another student at the law school copied his final examination answers came in the form of hearsay testimony which was objected to and stricken from the record at the hearing and an anonymous letter received post-hearing and addressed later in this opinion. Further, when given the opportunity by the Board to explain how his answers and D.S.'s answers were so similar, Widdison could not. SDCL 16–16–2.2 places the burden of proof by clear and convincing evidence upon Widdison. We agree with the Board's determination that he failed to provide any satisfactory explanation as to the similarities in the examination answers. Further, we find no error in the Board's failure to consider hearsay statements stricken from the record and an anonymous letter.

## ISSUE II

*Whether the Board erred by allowing the law school dean to remain in the hearing room following sequestration of other witnesses?*

Although Widdison claims a violation of a

confidentiality right in the private hearing,[10] he additionally argues an invasion of the Board's province by Dean Vickrey's opining as to what is considered academic misconduct at the University of South Dakota School of Law. Widdison contends any probative value of Vickrey's testimony was outweighed by unfair prejudice and his testimony should not have been admitted.[11]

We note at the outset that, during the hearing, Widdison agreed his objections to Vickrey's testimony were satisfied if that testimony were limited to addressing the degree of seriousness of allegations of misconduct, rather than any determination of actual misconduct. Our review of the record indicates Vickrey's testimony was so limited, thus, Widdison's objections to Vickrey's testimony were satisfied. Nevertheless, we address this issue as it is a question of first impression and may arise again.

■ At the hearing, the Board permitted Vickrey to testify as an expert witness regarding the degree of seriousness of the allegations of Widdison's conduct within the law school environment. Vickrey testified he became Dean of the Law School at the University of South Dakota in July 1993, and had eleven years of teaching and administration at the University of North Dakota School of Law prior to that date. He did not give his opinion as to whether Widdison should be admitted to the practice of law by the Board, but whether allegations such as those made against Widdison, if true, would be considered to be serious academic misconduct. Therefore, he did not usurp the Board's decision-making power. SDCL 16–16–2.3(1)(b) makes academic misconduct a relevant subject for inquiry into a state bar applicant's moral character. SDCL 16–16–2.4(1)(d) requires the Board to consider the seriousness of the conduct when an applicant's moral character is brought into question.

Arguably, Dean Vickrey's testimony was necessary to the proceedings. We have held that in professional licensing cases, expert testimony is necessary to establish an appropriate standard of care or conduct and whether the person seeking to retain his or her license met or fell below that standard. *In re Schramm*, 414 N.W.2d 31, 36 (S.D. 1987). This is to insure meaningful appellate review. An exception to this requirement is where the conduct or misconduct of the professional is so obviously substandard, that such expert testimony is unnecessary. *Id.* at 37. We do not need to decide whether Vickrey's testimony as an expert witness was necessary as Widdison does not raise the point.

■ It is well settled in South Dakota that the admissibility of an expert's opinion is within the trial court's discretion. SDCL 19–15–2; *Peery v. Dep't of Agriculture*, 402 N.W.2d 695, 696 (S.D.1987); *Buckley v. Fredericks*, 291 N.W.2d 770, 771 (S.D.1980). The trial court's decision to admit expert witness testimony will not be reversed absent a clear showing of an abuse of discretion. *State v. Hill*, 463 N.W.2d 674, 676 (S.D.1990); *State v. Logue*, 372 N.W.2d 151, 156 (S.D. 1985). In addition to waiving this issue, Widdison has not made a clear showing that the Board abused its discretion in permitting the Dean of the Law School to testify regarding whether the allegations would be considered serious academic misconduct.

10. Widdison does not provide any supporting authority for this assertion. Under SDCL 15–26A–60(6), previously discussed herein, we deem this claim waived. However, we note:

> [t]he sequestering of witnesses is within the trial court's discretion, and this includes the sequestering of expert witnesses. While witnesses who are to testify in an expert capacity only and not to the facts of the case should be exempt from a sequestration order, and it has been generally held or stated that experts are usually excepted from sequestration, numerous cases have held that the sequestering of an expert witness was not an abuse of discretion.

*State v. Traversie*, 387 N.W.2d 2, 6–7 (S.D.1986) (citations omitted). SDCL 19–14–29(3).

11. Widdison's criticism of Dean Vickrey as biased against Widdison is curious in light of the following statements contained in Widdison's brief:

> It is important to note here that Dean Vickrey had only been Dean of the law school for one semester. Dean Vickrey had never taught Hal [Widdison] in any law school class. Dean Vickrey did not personally know Hal. In fact, Dean Vickrey had never spoken to Hal during his tenure.

Appellant's Brief at 21.

## ISSUE III

*Whether the Board abused its discretion in denying Widdison's motion for a new hearing?*

Widdison claims new evidence in the form of an anonymous letter surfaced after the Board rendered its decision regarding his admission to practice law in this state. Widdison argues to this Court that this evidence was sufficient for the Board of Bar Examiners to grant his motion for a new hearing pursuant to SDCL 15–6–59(a)(4)[12] as it "clearly explains who the true culprit is" and that the Board abused its discretion in denying this motion.

 Before a motion for a new hearing based on new evidence may be granted, it must be shown that the evidence was not discoverable before the hearing and that it would have changed the outcome. *Massey Ferguson Credit Corp. v. Bice*, 450 N.W.2d 435, 441 (S.D.1990). The decision whether to grant a new hearing based on a claim of newly discovered evidence rests in the first instance with the Board and we will not disturb that decision on appeal unless it appears affirmatively from the record that there has been an abuse of discretion. *State v. Steele*, 510 N.W.2d 661, 664 (S.D.1994); *Enchanted World Doll Museum v. Buskohl* 398 N.W.2d 149, 153 (S.D.1986).

 Widdison claims he received an anonymous letter dated April 5, 1995 which describes the circumstances by which Widdison's Worker's Compensation final examination answers were so similar to another student's answers. Widdison claims this letter, written by a purported eyewitness, completely exonerates him of any wrongdoing. However, the letter, anonymously written and submitted, constitutes inadmissible hearsay. SDCL 19–16–1(3) and –4. *See Wayne v. State*, 498 N.W.2d 446, 448 (Minn.1993) (post-trial receipt of anonymous letter could not support appellant's motion for a new trial as an "attorney would not be able to lay the foundation necessary to admit the letter at

trial."). Considering the absence of any indicia of reliability of the anonymous letter, we hold that the Board did not abuse its discretion in denying Widdison's motion for a new hearing. Further, the record reflects, and the Board's letter denying the motion reveals, that the situation involving Widdison's Worker's Compensation examination was only one of many items the Board considered in reaching its decision that Widdison did not prove his qualifications for admission to practice law in this state. Thus, even if it were admissible, this new evidence would not have changed the outcome of the hearing as the Board clearly knew of the contents of the letter and gave it no credence.

## ISSUE IV

*Whether the Board erred by condoning its expert witness' actions following the hearing?*

 Widdison claims the Board condoned actions taken by Dean Vickrey at the Law School after the hearing had concluded. Specifically, Widdison claims Vickrey disclosed, orally and in writing, aspects of the hearing contrary to the Board's directive not to discuss the matter. This, and Widdison's claim that the Law School is suppressing evidence, is argued by Widdison to be grounds for a new hearing under SDCL 15–6–59(a)(1), irregularity in the proceedings.

 "The expression 'irregularity in the proceedings' . . . relates generally to departures by the court, during the trial of a case, from the due and orderly method of disposition of a case. . . . In South Dakota this concept includes misconduct on the part of the court, the attorneys, and the parties." *Bakker v. Irvine*, 519 N.W.2d 41, 46 (S.D. 1994) (citations omitted). We note that "irregularity in the proceedings" as contemplated by the statute and our recent definition of the term refers to occurrences *during*, and not after, trial. We also note the definition does not include alleged misconduct by wit-

---

12. We note that under SDCL 15–6–1, chapter 15–6 applies only to actions in circuit courts. *Sioux Falls Argus Leader v. Young*, 455 N.W.2d 864, 867 (1990). However, the statutes cited herein contained in chapter 15–6 provide a useful analytical framework for examination of the arguments advanced by Widdison.

nesses. However, we proceed to address Widdison's argument in this regard.

The record fails to support either of Widdison's contentions that the Board condoned Vickrey's actions or that the Law School is suppressing evidence. The record includes a copy of a memorandum dated June 15, 1995 sent to Law School students by Dean Vickrey requesting anyone with exculpatory evidence regarding the Widdison matter to come forward and submit such evidence to the Board of Bar Examiners and the Law School separately. Widdison's evidence to the contrary is found within a second anonymous letter, dated May 2, 1995, received by his attorney. As previously noted, this evidence cannot be seriously considered as it lacks reliability. Further, the record includes a copy of a letter to Vickrey from the Board chairperson regarding Vickrey's discussions of the matters before the Board involving Widdison that clearly establishes that the Board did not participate in these actions. We, therefore, find Widdison's claims to be contrary to factual evidence in the record.

### CONCLUSION

 Widdison has the burden of proving by clear and convincing evidence his qualifications for admission to practice law in this state. SDCL 16–16–2.2. One of those qualifications is that he "be a person of good moral character." SDCL 16–16–2. SDCL 16–16–2.1 defines "good moral character" as including, but not limited to, "qualities of honesty, candor, trustworthiness, diligence, reliability, observance of fiduciary and financial responsibility, and respect for the rights of others and for the judicial process." That statute also provides that "[a]ny fact reflect-

ing a deficiency of good moral character may constitute a basis for denial of admission." SDCL 16–16–2.1 (emphasis added). Good moral character is a prerequisite to practice law in every state. *Layon v. North Dakota State Bar Bd.*, 458 N.W.2d 501, 503 (N.D. 1990); *In re Admission of Martin*, 181 Wis.2d 27, 510 N.W.2d 687, 688 n. 2 (1994); *In re Haukebo*, 352 N.W.2d 752, 754 (Minn. 1984).

The Board found Widdison failed to meet his burden. Moreover, Widdison's age,[13] recency of the conduct at issue, and lack of candor with his attorney, the Law School Disciplinary Board,[14] and the Board of Bar Examiners do not weigh in his favor. We also find there was neither remorse nor rehabilitation shown by Widdison.[15] All of these factors may be considered in the determination of Widdison's moral character. SDCL 16–16–2.4.

 Widdison's additional failure to inform the Board of the law review incident compounds his problems with the Board. *See In re Application of Majorek*, 244 Neb. 595, 508 N.W.2d 275, 281 (1993) (listing courts which hold that false, misleading, or evasive responses to bar application questions may be grounds for finding a lack of good moral character). The Board, in its findings, cited this failure as an independent basis for support of its ultimate determination. We have repeatedly held in attorney disciplinary cases that those attorneys who seek to defend their license against complaints must fully cooperate with, and inform the Disciplinary Board of all relevant facts. To do otherwise weighs " 'heavily against the plea that we exercise leniency in imposing discipline.' " *In re Discipline of Tidball*, 503

---

13. Widdison was age 32 at the time of the hearing.

14. Throughout these proceedings, Widdison has attempted to bring in the activities of the Law School Disciplinary Board. He criticized it for what he considered a lack of fairness in the Worker's Compensation final examination matter and then reverses course and states that the law review matter was so minor it was not even considered by the Disciplinary Board. The Law School Disciplinary Board is a separate and distinct entity from the Board of Bar Examiners. While both may have mutual interests, the deci-

sions of one board has no binding effect on the other.

15. Throughout these proceedings, Widdison has blamed his problems on D.S., Dean Vickrey, the Law School, the Disciplinary Board, the law review faculty advisor, the Worker's Compensation professor, and the Board of Bar Examiners. This attitude evidences not remorse, but a blaming others' mentality. *In re Discipline of Jeffries*, 500 N.W.2d 220, 227 (S.D.1993) (*Jeffries II*) (Henderson, J., dissenting).

N.W.2d 850, 855 (S.D.1993) (quoting *In re Rude*, 88 S.D. 416, 425, 221 N.W.2d 43, 49 (1974)). It also provides the basis for "increasing the severity of the appropriate discipline imposed for the commission of other acts of unprofessional conduct." *Id.* We recognize the present case involves a question of admission to the bar rather than attorney discipline, however, the same rationale applies here with equal justification.

 " '[T]he state bears a special responsibility for maintaining standards among members of the licensed professions' " such as attorneys at law. *Schramm*, 414 N.W.2d at 34 (quoting *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460, 98 S.Ct. 1912, 1920, 56 L.Ed.2d 444, 456 (1978)). In South Dakota, that obligation and duty, pursuant to Art. V, § 12 of our Constitution, ultimately falls upon this Court. *In re Discipline of Hopewell*, 507 N.W.2d 911, 917 (S.D.1993). "Public confidence that the legal profession, under the supervision of this Court, can keep its affairs in order must be zealously maintained." *Tidball*, 503 N.W.2d at 856 (citing *In re Kunkle*, 88 S.D. 269, 218 N.W.2d 521, 527 (1974)). The same zeal to protect the public from the unfit within the bar must also be applied to the unfit who would seek to enter the bar.

With these great responsibilities to protect the public and ensure the ethics and professionalism of the bar in this State which it serves, we cannot accept the view placed in the record by a Law School faculty member in support of Widdison that this was merely a case of "senioritis." The failure to act in accordance with the rules is compounded by the failure to accept responsibility for these acts. The violations here are of the most serious nature as they go to the heart of the judicial system—the matter of personal legal ethics and trust. He acts at his peril who treats the rules for admission to the bar with the indifference accorded an unsolicited invitation to join a book club. *Tidball*, 503 N.W.2d at 855 (quoting *Rude*, 88 S.D. at 423, 221 N.W.2d at 47).

We determine that Widdison has not met his burden of proving good moral character. We affirm the Board's order in its entirety, with leave to reapply at a future date provided Widdison is able to rectify his character deficits and show he has gained an understanding of, and the ability to put into practice, the qualities of honesty, candor, and responsibility required for admission to practice in this state.

MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., concur.