2005 SD 65

## In the Matter of John C. OGILVIE, Jr.

### No. 21757.

Supreme Court of South Dakota.

Argued April 27, 2005.

Decided May 25, 2005.

See also 623 N.W.2d 55 (2001).

Craig M. Eichstadt, Pierre, SD, for Board of Bar Examiners.

John C. Ogilvie, Jr., Rapid City, SD, pro se applicant.

KONENKAMP, Justice.

[¶ 1.] John C. Ogilvie, Jr., was conditionally admitted to the State Bar of South Dakota in 2001. Having found that he failed to maintain the requirements of his conditional admission, the Board of Bar Examiners recommended that his license be revoked. Based on our conclusions set out below, we revoke his conditional license as a South Dakota attorney.

### Background

[¶ 2.] In 2001, we granted John C. Ogilvie, Jr., a conditional admission to practice law in South Dakota. *See In re Ogilvie*, 2001 SD 29, 623 N.W.2d 55. The specifics of his background and the reasons for our ruling can be found in that opinion. It will now suffice to say only that he was not granted a full admission to the bar because of his history of two DUI arrests, acts of alleged domestic abuse, failure to pass a drug screening test for an earlier job, delinquency in child support payments, and interference with a witness in a divorce trial. Despite this history, Ogilvie convinced this Court that these concerns were resolved and should not deny him the opportunity for a conditional admission. *Id.* ¶ 11, 623 N.W.2d at 58 (split decision: he "carried his burden of proving good moral character as required under SDCL 16–16–2.2").

[¶ 3.] As part of his conditional admission, we ruled that Ogilvie should participate in a three-year mentorship program.

During this time, the Board would keep close oversight of his law practice and his behavior. His license was "subject to revocation" in the event he was unsuccessful in maintaining the requirements of his conditional admission. *Id.*

[¶ 4.] On December 22, 2003, the Board held a hearing to consider new disclosures about Ogilvie's conduct. Testimony was given by several witnesses, including Ogilvie. The new information concerned allegations of domestic violence, alcohol abuse, unprofessional conduct, and neglect of clients' cases. After considering these matters, the Board recommended that Ogilvie's license be immediately suspended, that his conditional admission be revoked, and that he be prohibited from reapplying for such period as this Court deems proper. We suspended Ogilvie's license on April 1, 2004. In the interim, the Board and Ogilvie submitted briefs, and thereafter we heard oral arguments. The question before us is whether Ogilvie has maintained good moral character as required by SDCL 16–16–17.1 so that his conditional admission can continue. *See* SDCL. 16–16–17.1 (1996).

### Analysis and Decision

[¶ 5.] It is our responsibility to oversee all bar admissions in South Dakota. *In re Widdison,* 539 N.W.2d 671, 675 (S.D.1995); *In re Shemonsky,* 379 N.W.2d 316, 318 (S.D.1985). We are not bound by any recommendation from the Board of Bar Examiners. *Widdison,* 539 N.W.2d at 675 (citing *Shemonsky,* 379 N.W.2d at 318); *see* SDCL 16–16–16 (2003). Nonetheless, we give due consideration to the Board's character and credibility determinations. *Ogilvie,* 2001 SD 29, ¶¶ 5, 10, 623 N.W.2d at 56, 58 (citations omitted). Conditionally licensed attorneys maintain the continuing burden of proof to show by clear and convincing evidence that they possess good character and moral fitness.

*Id.* ¶ 5; SDCL 16–16–2.2 (1996). A conditional admission "offers a probationary period for those not able to gain admission to practice because of misconduct in the past or lingering questions of character in the present." *Ogilvie,* 2001 SD 29, ¶ 16, 623 N.W.2d at 59 (Konenkamp, J., concurring).

[¶ 6.] South Dakota's conditional admission statute provides:

If the Board of Bar Examiners determines that there are unresolved issues of good moral character, fitness, or general qualifications of the applicant, the board, in its discretion, may make a recommendation to the Supreme Court of conditional admission. The recommendation may incorporate such terms, conditions, and restrictions and be for such duration as the board determines appropriate. The Supreme Court may accept or reject the recommendation.

The Board of Bar Examiners shall review the conditional admission no later than the date specified in the recommendation and recommend to the Supreme Court that:

(1) The conditional admission be terminated, resulting in loss of license; or

(2) That the conditional admission be modified and/or extended; or

(3) That full admission be granted.

The Supreme Court may accept or reject the recommendation. . . . . .

SDCL 16–16–17.1.

[¶ 7.] In *Widdison,* we described the privileged status of bar membership:

'[T]he right to practice law' is not in any proper sense of the word a 'right' at all, but rather a matter of license and high privilege. Certainly, it is in no sense an absolute right. It is in the nature of a franchise to the enjoyment of which no one is admitted as a matter of right, but only upon proof of fitness and qualifica-

tions which must be maintained if the privilege is to continue in enjoyment. 539 N.W.2d at 675 (following *In re Egan*, 52 S.D. 394, 398, 218 N.W. 1, 2–3 (1928)). A vital and mandatory component to the privilege of practicing law is good moral character as set forth in SDCL 16–16–2. "Good moral character," defined in § 16–16–2.1, "includes but is not limited to qualities of honesty, candor, trustworthiness, diligence, reliability, observance of fiduciary and financial responsibility, and respect for the rights of others and for the judicial process." *Id.* (1990).

[¶ 8.] In our de novo review of the record, we find several salient concerns bearing directly on the question of Ogilvie's character. First, there are incidents of domestic abuse. The Board found that "Ogilvie intentionally engaged in violent behavior against [his girlfriend] and that he intentionally struck [her] while in his home after a night of extensive drinking." The Board did not believe Ogilvie's explanation that he merely hit her reflexively with his elbow after she poured something over his head from behind. In another incident, the Board concluded that "Ogilvie shoved [his girlfriend] against the door of his pickup, bruising her."

[¶ 9.] Ogilvie's girlfriend obtained a protection order against him. He, in turn, sought his own protection order. The Board concluded that his decision to seek his own protection order "was improper in that it was brought for the purpose of defending against [his girlfriend's] protection order application." The Board concluded that his protection order request "lacked any substantial evidentiary or factual backing; and that it was brought for the improper purpose of harassing [his girlfriend] and making her litigation against Ogilvie more difficult."

[¶ 10.] Ogilvie was apparently caught up in another corrosive relationship, exacerbated by heavy drinking. These incidents are evocative of the dysfunctional relationship Ogilvie had with Colleen Roper in 1992, which we considered in our earlier decision. With both women, Ogilvie insisted that they deserve no credibility and that he has never committed any act of domestic violence.

[¶ 11.] Second, there are incidents of cavalier and sometimes underhanded practices. Ogilvie deposited $5,000 in his trust account to assist his girlfriend in hiding money from her creditors. He placed money from unearned fees and unpaid filing fees in his personal account rather than his trust account. He occasionally paid his sales taxes late. He amended a divorce stipulation sent to him by opposing counsel, had his client sign it, and then sent it back to counsel without any forewarning that the agreement had been amended. Although he has had a mentor available to assist him in practicing law, he has not made effective use of this attorney.

[¶ 12.] Third, there are persistent concerns about his alcohol consumption. The Board concluded that his drinking was abusive. By his own admission, he drank every day and would regularly have six to eight beers on Friday nights. At oral argument, Ogilvie told us that, with the one exception of a wedding reception, he has not "been in a bar since [he] was suspended from practice over a year ago." But his consumption remains the question. We were concerned with his alcohol usage in the first proceeding, given that we related in the opinion his past DUI arrests and required that he supply to the Board any requested records of his chemical dependency assessments. As noted the last time, "[i]t seems that many of his problems occurred at a time when he was abusing chemicals." *Ogilvie*, 2001 SD 29, ¶ 27, 623 N.W.2d at 61 (Konenkamp, J., concurring).

[¶ 13.] Fourth, in a negligence suit brought on behalf of a client, Ogilvie failed to act with due competence. This matter involved a cause of action that Ogilvie brought on behalf of a man hit by a car while riding his wheelchair on a street in the dark. The case, according to Ogilvie, turned out to be without merit. After further research, Ogilvie thought he should have never taken the case, and that there was little or no law justifying the lawsuit in the first instance. With no legal support, Ogilvie proceeded ineffectually to develop the facts, challenge the opposition's motions, or settle the matter. He took no depositions and did not oppose his adversary's second motion for summary judgment. Much of Ogilvie's problems in handling this case could have been avoided if he had sought early assistance from his mentor. At the hearing before the Board, Ogilvie admitted that he "didn't know what [he] was doing."

[¶ 14.] In his brief to this Court, Ogilvie responded to some of these allegations, but failed to answer others.* His failure to respond is tantamount to an admission. On the allegations he did respond to, Ogilvie argued that they were overblown or false. We look at all the circumstances in their totality, and, in our de novo review, we conclude that the Board was correct in its assessment. Ogilvie was granted a conditional license on the premise that he had resolved his past issues. Yet we now find him in a situation less tenable than when his application to practice law was first under consideration. Problems on which he earlier received the benefit of the doubt have re-emerged. We gave him the opportunity to prove himself, which is the purpose behind conditional admissions. As we noted in our prior opinion, however, his conditional admission was "subject to revocation" if he failed to adhere to "any of" his conditions. *Ogilvie*, 2001 SD 29, ¶ 11, 623 N.W.2d at 58. The burden to show good moral character to the Board and this Court remained on Ogilvie. We conclude that he has not met his burden of showing by clear and convincing evidence that he has the good moral character to continue to practice law in South Dakota.

[¶ 15.] Under SDCL 16–16–17.1, Ogilvie's conditional admission is revoked. He may not reapply for admission earlier than April 1, 2009, five years from the date his license was suspended.

[¶ 16.] GILBERTSON, Chief Justice, and ZINTER and MEIERHENRY, Justices, and ANDERSON, JAMES, Circuit Court Judge, concur.

[¶ 17.] ANDERSON, JAMES, Circuit Court Judge, sitting for SABERS, Justice, disqualified.

---

* In his appellate brief, Ogilvie did not address all the Board's findings against him. For example, he gave no explanation contrary to the Board's conclusion that he misused the protection order process and his trust account. His failure to dispute these matters waives our examination of them. SDCL 15–26A–60(6); *State v. Hoxsie*, 1997 SD 119, ¶ 14, 570 N.W.2d 379, 382. He did respond to some additional allegations at oral argument, but his explanations were unsatisfactory.