#25358-a-PER CURIAM
**2010 SD 37**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JOHN R. STEELE,                              Plaintiff and Appellee,

v.

HAZEL BONNER,                            Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JAMES W. ANDERSON
Retired Circuit Judge

\* \* \* \*

JAMES L. WAGGONER             Attorney for plaintiff
Rapid City, South Dakota        and appellee.

HAZEL BONNER
Rapid City, South Dakota        Pro se.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MARCH 22, 2010

OPINION FILED **05/05/2010**

#25358

PER CURIAM

[¶1.]     John Steele (Steele), as chairman of the Consumer Protection Committee of the State Bar of South Dakota, sought a permanent injunction enjoining Hazel Bonner (Bonner) from practicing law without a license. After a court trial, the court granted Steele's permanent injunction, permanently enjoining Bonner from certain specified conduct relating to the practice of law.

FACTS

[¶2.]     Bonner is a 1994 graduate of the University of South Dakota School of Law. She has never successfully passed the South Dakota bar exam (or any other bar exam), nor has she been admitted to the practice of law by this Court. Thus, Bonner has never been qualified to become a member of the State Bar of South Dakota.

[¶3.]     In October of 2002, Thomas C. Barnett, Jr. (Barnett), Secretary/Treasurer of the State Bar of South Dakota, received a formal complaint from Jeremiah Davis, an attorney with the Pennington County Public Defender's office, regarding Bonner. Davis' complaint alleged Bonner was engaging in the practice of law without a license. The letter discussed two situations in which Bonner had interfered with Davis' representation of criminal defendants.

[¶4.]     The first incident concerned Bonner's contact with a young man being housed at Pennington County jail who was charged with homicide. Against the advice of Davis, the young man's appointed attorney, the young man talked with Bonner, who wrote a newspaper article about the young man. Davis had been informed Bonner suggested the young man sign a "power of attorney" which would ostensibly protect Bonner's conversations with the young man by the attorney/client

privilege. Davis was concerned the communication the young man had with Bonner may be used against the young man at trial.

[¶5.] The second incident concerned Bonner's involvement in a criminal child abuse case. When Davis appeared for the preliminary hearing on behalf of his clients, the magistrate informed Davis an exhibit had been presented to the court on behalf of his client. Davis had not prepared the exhibit or even knew of the exhibit's existence. This exhibit was entitled "a report to the court concerning three children" submitted by "Hazel Bonner, independent investigator and advocate of Rapid City South Dakota, also an associate professor of Sociology at Oglala Lakota College." The headings of that portion of the "report" entitled "My Findings" include: "Best efforts to reunite the family are required in this case," and "Placement in this case cannot be considered the least restrictive environment." The "report" also included a section entitled "[a] plea offer from the prosecutor." This section disclosed plea negotiations and an allegation that Davis told his client "if she went to trial she would be convicted because she is Indian, juries in Rapid City are white and discriminate against Indians." The final sentence of the document reads: "If that doesn't happen, the parents have asked me to relay to the court that they are petitioning the court to transfer the proceedings to the Rosebud Sioux Tribe in accordance with 25 USC § 1911(b)."

[¶6.] Later in October 2002, a small claims complaint was filed against Bonner alleging Bonner had answered Season Sunhawk's ad for legal work and then had not performed the work. In her answer to the complaint, Bonner alleged:

> I told him I had done 3 hours of research. I had written a
> memo on At-Will Employment in South Dakota. I had
> determined that Wal Mart did not need to give him notice

of termination or a reason for termination and a chance to remedy any substandard job performance and that the termination was probably legal under South Dakota law unless it was retaliatory or discriminatory. He was claiming it was discriminatory.

At trial Bonner testified she gave this information to Sunhawk. Sunhawk received a default judgment against Bonner in that action.

[¶7.] In January 2003, Barnett received correspondence from the administrative officer for the federal public defender regarding a problem their office had with Bonner. The essence of the correspondence and accompanying attachments was that Bonner had meddled in a case, given advice, and attempted to file pleadings with the United States Federal District Court.

[¶8.] In 2008, Bonner attempted to represent a veteran in a benefit appeal. The veteran was being represented by a non-attorney advocate approved by the American Legion. This advocate testified at trial that Bonner had questioned her handling of the appeal, and that Bonner had filed paperwork which ultimately delayed the veteran's benefits. Most disconcerting to the advocate was Bonner's initial representation of herself as an attorney.

[¶9.] Bonner maintains she did not engage in the practice of law, but merely assisted individuals whose attorneys had failed them.

[¶10.] After the trial on this permanent injunction matter, the trial court found that Bonner had engaged in the practice of law without a license, and entered an injunction permanently prohibiting certain conduct. Bonner appeals.

STANDARD

[¶11.] This Court's review of a decision regarding injunctive relief is well settled:

> Granting or denying an injunction rests in the sound discretion of the trial court. We will not disturb a ruling on injunctive relief unless we find an abuse of discretion. An abuse of discretion can simply be an error of law or it might denote a discretion exercised to an unjustified purpose, against reason and evidence.
>
> In doing so, we review the trial court's findings of fact under a clearly erroneous standard, but we give no deference to the trial court's conclusions of law.

Halls v. White, 2006 SD 47, ¶ 4, 715 NW2d 577, 579 (internal quotations and citations omitted).

[¶12.]     SDCL 16-18-1 specifically authorizes injunctions to prohibit individuals from practicing law without a license. This section states:

> Excepting as provided by § 16-18-2, no person shall engage in any manner in the practice of law in the State of South Dakota unless such person be duly licensed as an attorney at law, and be an active member of the state bar in good standing. Any person engaging in any manner in the practice of law in violation of this section may be restrained by permanent injunction in any court of competent jurisdiction, at the suit of the attorney general or any citizen of the state.

SDCL 16-18-1.

[¶13.]     The trial court found Bonner engaged in the practice of law. The trial court's findings of fact will not be overturned unless clearly erroneous. *Halls*, 2006 SD 47, ¶ 4, 715 NW2d at 579.

ISSUES

[¶14.]     Bonner sets forth the "legal issues presented" as follows:

1.     Failure to protect due process rights of defendant.

2.     Entrance of a final permanent injunction that violates constitutional rights of defendant.

-4-

3.      Final order included unacceptable mistakes which after reading transcript of final order I tried to correct but final order had same unacceptable mistake.

4.      The injunction protects only the licensed attorneys, not a function of the State Bar Grievance Committee.

5.      Total cost of persecution/prosecution appears unwarranted, all done at taxpayer expense.

6.      After receiving the transcript I add: An order that all transcripts be word for word reports of what actually happened in court.

[¶15.] Throughout her pro se brief, Bonner appears to argue that she has not engaged in the practice of law; therefore, no injunction should have entered against her. Steele condenses Bonner's issues on appeal to: "[w]hether there was sufficient evidence produced at the time of the trial to establish that the actions of Bonner constituted the practice of law so as to permit the trial court to enter a permanent injunction enjoining Bonner from any further such activity."

ANALYSIS

[¶16.] Even where a person is a duly licensed attorney,[1] we have consistently held that the opportunity to practice law is a privilege and in no sense a right:

---

1.     The successful passage of the South Dakota bar exam does not equate with membership in the bar. To become a licensed attorney and properly represent the public an applicant must also possess good moral character. SDCL 16-16-2. The applicant must establish good moral character by clear and convincing evidence to the satisfaction of this Court. SDCL 16-16-2.2; *In re* Widdison, 539 NW2d 671, 675 (SD 1995). SDCL 16-16-2.1 defines good moral character as including but not limited to "qualities of honesty, candor, trustworthiness, diligence, reliability, observance of fiduciary and financial responsibility, and respect for the rights of others and for the judicial process." Good moral character is a prerequisite to practice law in every state. *Widdison*, 539 NW2d at 678 (citing Layon v. North Dakota State Bar Bd., 458 NW2d 501, 503 (ND 1990)).

> '[T]he right to practice law' is not in any proper sense of the word a 'right' at all, but rather a matter of license and high privilege. Certainly, it is in no sense an absolute right. It is in the nature of a franchise to the enjoyment of which no one is admitted as a matter of right, but only upon proof of fitness and qualifications which must be maintained if the privilege is to continue in enjoyment.

*In re* Widdison, 539 NW2d 671, 675 (SD 1995) (quoting *In re* Egan, 52 SD 394, 402, 218 NW 1, 2-3 (1928)). The purpose is to protect the public from the fraudulent, unethical or incompetent practice of law. *In re* LaPrath, 2003 SD 114, ¶ 43, 670 NW2d 41, 56 (citing Discipline of Kallenberger, 493 NW2d 709 (SD 1992)). Only those who meet this high fiduciary standard are allowed to assist those in need of competent legal representation:

> A certificate of admission to the bar is a pilot's license which authorizes its possessor to assume full control of the important affairs of others and to guide and safeguard them when, without such assistance, they would be helpless. Moreover, in [South Dakota] it is a representation made by this court he [or she] is worthy of the unlimited confidence which clients repose in their attorneys; trustworthy to an extent that only lawyers are trusted, and fit and qualified to discharge the duties which devolve upon members of his profession.

*Id.* ¶ 42, 670 NW2d at 66 (quoting *Egan*, 52 SD at 402, 218 NW at 4).

ISSUE ONE

[¶17.] **Failure to protect the due process rights of defendant.**

[¶18.] Initially, Bonner points to the fact that the summons and complaint had not been filed with the clerk of courts before she attempted to respond. In support, Bonner quotes SDCL 12-22-8 (incorrectly cited as section 13-22-8), which concerns commencing an election contest. Moreover, Bonner makes no claim that she didn't receive proper notice. In her prayer for relief regarding this issue,

Bonner requests all attorneys be required to commence actions by filing them with the clerk's office. As Bonner received notice and participated at every stage, her argument is unavailing. *See* Flanders v. Ford City Borough Council, 986 A2d 964, 973 (PaCommwCt 2009) (participating in proceedings waives alleged deficiencies in notice and service).

[¶19.] Bonner's next due process argument turns to the difficulties Bonner encountered attempting to remove Judge Fuller from this matter. Judge Fuller recused himself prior to trial as well as did all other judges of the Seventh Judicial Circuit. The trial was conducted by an out-of-circuit retired Circuit Judge, Judge James W. Anderson.

[¶20.] Bonner also raises an issue regarding documents that were introduced at trial that she apparently had not seen before. These documents were presented during the trial, and at that time Bonner did not object to their admission. Assuming Bonner raises an evidentiary question; evidentiary rulings made by the trial court are "presumed correct and reviewed under an abuse of discretion standard." Wangsness v. Builders Cashway, 2010 SD 14, ¶ 11, 779 NW2d 136, 140.

> It is elementary that "evidence, received without objection, is available to the trier of fact . . . ." Killian v. Hubbard, 69 SD 289, 295, 9 NW2d 700, 703 (1943).
>
> If when inadmissible evidence is offered the party against whom such evidence is offered consents to its introduction, or fails to object, or to insist upon a ruling on an objection to the introduction of such evidence, and otherwise fails to raise the question as to its admissibility, he is considered to have waived whatever objection he may have had thereto, and the evidence is in the record for consideration the same as other evidence.

Bakker v. Irvine, 519 NW2d 41, 46-47 (SD 1994) (internal citations omitted). Here the trial court appropriately considered the evidence.

ISSUE TWO

**[¶21.]** **Entrance of a final permanent injunction that violates constitutional rights of defendant.**

**[¶22.]** Bonner takes issue with each of the activities the trial court enjoined her from performing. Bonner foregoes any argument regarding specific constitutional issues, yet argues: "Excuse me I don't know what thing can have a pleading prepared for them?" And, "Perhaps we should all be lined up and just shot, but we are a nation under law, aren't we? But whose law, the licensed attorneys?"

**[¶23.]** The injunction prohibits Bonner from contacting defendants charged with crimes who are already represented by counsel without that counsel's consent. Regarding this prohibition, Bonner states: "Excuse me I have the constitutional right of association and will continue associating with whom I wish in and out of jail." Bonner offers no argument or support for this proposition.

**[¶24.]** The United States Supreme Court has distinguished between "intimate association" and "expressive association." Schlarp v. Dern, 610 FSupp2d 450, 461 (WDPa 2009) (citing Roberts v. U.S. Jaycees, 468 US 609, 618, 104 SCt 3244, 82 LEd2d 462 (1984)). The right to intimate association involves "the right of an individual to develop deeply personal attachments with other individuals." *Id*. This freedom has typically been construed to protect the right to marry, rear children, engage in consensual sexual activity, and associate with family members. *Id*. This freedom is not absolute, and "even a significant interference with an individual's freedom of association may be sustained if there exists a sufficiently

important state interest, and the means employed are narrowly drawn to avoid unnecessary abridgment of associational freedoms." Wingate v. Gage County Sch. Dist., No. 34, 528 F3d 1074, 1081 (8thCir 2008). This class of freedom of association is founded upon the Due Process Clause of the Fourteenth Amendment. *Schlarp*, 610 FSupp2d at 461-62.

[¶25.] The freedom of expressive association is founded on the First Amendment. "Federal courts 'have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.'" *Id*. at 462 (quoting *Roberts*, 468 US at 622, 104 SCt at 3244). "The right to associate for expressive purposes is not, however, absolute. Infringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts*, 468 US at 623, 104 SCt at 3252.

[¶26.] In this case, South Dakota's interest in protecting the public from the unauthorized practice of law justifies any potential impact on Bonner's associational rights. Bonner is only being restricted from associating with criminal defendants who are represented by an attorney. She has no more right to practice law for these individuals than she does to practice surgery on them. This abridgement protects the public, especially the defendants with whom Bonner may have contact, while restricting Bonner's freedom of association in the least restrictive manner. The injunction does not violate Bonner's constitutional rights.

## ISSUE THREE

[¶27.]    **Unacceptable mistake in final order.**

[¶28.]    In the final order, the trial court referred to a case in which Bonner had assisted as "United States of America v. Daryl Fast Horse." Bonner points out that the individuals were named "Fast Wolf." Bonner is unable to point to any manner in which her rights may have been affected by this error.

## ISSUE FOUR

[¶29.]    **Injunction protects only the licensed attorneys, not a function of the state bar.**

[¶30.]    The focus of Bonner's discussion is that she will not stop her conduct, and that she fervently requests a criminal charge be filed against her so that she can have her day in court. Bonner includes no argument concerning any alleged irregularity below.

## ISSUE FIVE

[¶31.]    **Total cost of persecution/prosecution borne by taxpayers.**

[¶32.]    Bonner questions the cost of this action. If Bonner seeks relief for any perceived error regarding the cost of bringing this action, it is entirely indecipherable from the brief.

## ISSUE SIX

[¶33.]    **An order that all transcripts be word for word reports of what actually happened in court.**

[¶34.]    Bonner provides no discussion on this issue, and therefore it is waived. *See* State v. Darby, 1996 SD 127, ¶ 44, 556 NW2d 311, 322 (failing to argue an issue after it has been raised on appeal waives the issue).

[¶35.] Bonner's only citations to legal authority in her initial brief are two statutes. One statute concerns commencement of a challenge to an election, the other addresses disqualification of a judge. Neither of these statutes are offered for any issue on which Bonner may receive relief. As has been stated many times by this Court, Bonner's failure to cite authority is fatal. SDCL 15-26A-60(6); Hart v. Miller, 2000 SD 53, ¶ 42, 609 NW2d 138, 148. Bonner includes a table of authorities in her reply brief, but in no way indicates which authorities are being provided for which propositions or arguments, nor indicates in the text of her reply which authorities support her argument. Affirmance is appropriate based solely on Bonner's failure to present any authority for the arguments she espouses.

[¶36.] The trial court's findings of fact that Bonner engaged in the practice of law without a license are supported by the record. Bonner has provided nothing in the way of authority or persuasive argument to the contrary. As this Court has stated:

> Practicing law "is not limited to conducting litigation, but includes giving legal advice and counsel, and rendering services that require the use of legal knowledge or skill and the preparing of instruments and contracts by which legal rights are secured, whether or not the matter is pending in court."

Persche v. Jones, 387 NW2d 32, 36-37 (SD 1986) (citation omitted). Bonner's activities included: preparing filings for the signature of individuals involved in legal proceedings; offering advice to "clients" on application of facts to the law as Bonner researched; submission of reports to the court suggesting the proper disposition of criminal and abuse and neglect proceedings, in which Bonner clearly advocates for her "clients;" and holding herself out as a lawyer.

#25358

[¶37.]     The legal authorities support the policy reasons for protecting the public from the practice of law by unlicensed laypersons.  There is no difference if we condemned this type of misconduct by a person who had been disbarred or failed to pass a bar exam from Bonner, who has never taken it.  The trial court's decision was guided by the obligation to protect the public by precluding the unlicensed and unfit to practice law upon their behalf.  This compelling need has been clearly demonstrated to this Court by a review of the trial record and Bonner's bewildering appellate briefs.

[¶38.]     The trial court is affirmed.

[¶39.]     GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, MEIERHENRY, and SEVERSON, Justices, participating.