**In the Matter of the DISCIPLINE OF Raymond H. KINTZ, as an Attorney at Law.**

**No. 13287.**

Supreme Court of South Dakota.

Jan. 27, 1982.

R. James Zieser, Disciplinary Bd., The State Bar of South Dakota, Tyndall, for complainant, Disciplinary Bd. of the State Bar.

No appearance on behalf of respondent, Raymond H. Kintz.

PER CURIAM.

Following an unsuccessful attempt to resolve certain complaints that had been filed with it concerning Raymond H. Kintz (respondent), the Disciplinary Board of the State Bar (board) conducted an investigation and filed a formal accusation with the Court pursuant to SDCL 16–19–67. The accusation charged that respondent had violated SDCL 16–19–33(5),[1] that he had violated Canon 6 of the Code of Professional Responsibility[2] by neglecting legal matters that had been entrusted to him by two clients, and that he had violated SDCL 16–19–54[3] by failing to promptly and appropriately respond to the complaints made by those clients and to the request made by the board that he appear before the board. We thereupon appointed The Honorable Eugene E. Dobberpuhl, a circuit judge of the Fifth Judicial Circuit, as referee for the purpose of taking testimony and submitting findings and a recommendation concerning the accusation against respondent.

Following a hearing on June 4, 1981, at which respondent appeared pro se and testified, the referee on July 6, 1981, filed his findings and recommendations with this Court.

Based upon respondent's admissions under oath in open court and the evidence submitted by the board, the referee found by a clear preponderance of the evidence that the allegations set forth in the board's formal accusation were true.

The referee found that sometime in 1972 one Charles Red Bird, who then was operating a ranch west of Mobridge, filed a complaint in the tribal court of the Cheyenne River Sioux Tribe with respect to some eighty cows and two bulls that had been taken from him by tribal employees. Upon receiving no relief from the tribal court, Mr. Red Bird took certain papers concerning these cattle to respondent with the request that respondent take action against the Cheyenne River Sioux Tribe to regain the cattle. Respondent did some field work, made an investigation, and started gathering facts about the case. Respondent took no further action, whereupon Mr. Red Bird made some six separate attempts to recover the papers that he had delivered to respondent. Respondent was unable to find the papers, however, and had not yet returned them at the time of the hearing. Respondent has received nothing from Mr. Red Bird in the way of a retainer or a fee for services performed. Respondent failed to respond to Mr. Red Bird's complaint when requested to do so by the board.

On August 11, 1978, the law firm of Shapiro Green & Beinhaker of Westmount, Quebec, Canada, sent to respondent on behalf of one of their Canadian clients a collection in the amount of $319.11 against a business firm in Deadwood, South Dakota. By letter dated August 21, 1978, respondent acknowledged receipt of the referral and advised Mr. Irving Shapiro that he had had a telephone conversation with a representative of the debtor concerning the matter. On September 27, 1978, respondent again wrote to Mr. Shapiro, advising him that he had not received any response to his request for payment from the debtor and enclosing

---

1. SDCL 16–19–33 provides:

   The following shall similarly constitute misconduct and shall be grounds for discipline:

   . . . .

   (5) Willful violation of any bylaw, rule, or regulation duly adopted by the state bar and approved by the Supreme Court[.]

2. Code of Professional Responsibility Canon 6 provides that: "A Lawyer Should Represent a Client Competently." SDCL 16–18, App.

3. SDCL 16–19–54 provides:

   It shall be the duty of every attorney to promptly and appropriately respond to any complaint or letter forwarded to him by any member of the disciplinary board. In the event he shall fail to do so, he may be subject to private reprimand by the disciplinary board, or, after hearing upon order to show cause, disciplined by the Supreme Court.

a copy of a summons and complaint that he had sent out for service. Respondent requested a deposit from Mr. Shapiro of $50 in the nature of a suit fee, which was sent to him by Mr. Shapiro on October 27, 1978. On October 16, 1978, respondent advised Mr. Shapiro by letter that service of process had been made on October 10, that defendant would have thirty days in which to answer the complaint, and that an application for default could be made at the end of the thirty-day period if defendant failed to file an answer. Respondent apparently did nothing to pursue the matter, notwithstanding numerous letters from Mr. Shapiro and a telephone conversation on March 30, 1979, during which respondent apparently informed Mr. Shapiro that he would take a judgment on April 2, 1979, and would thereafter proceed with execution and seizure. Respondent did nothing further, however, and upon receiving no reply to registered letters sent to respondent on April 26, 1979, and June 8, 1979, Mr. Shapiro filed a complaint with the board on March 31, 1980. On April 8, 1980, the chairman of the board sent to respondent a copy of Mr. Shapiro's complaint and asked that respondent file his response within fifteen days. Respondent failed to do so.

On August 25, 1980, the board sent to respondent a notice requiring respondent's attendance at a meeting of the board to be held on September 26, 1980, for the purpose of considering the complaints filed by Mr. Red Bird and Mr. Shapiro. Respondent failed to appear at the hearing or to in any other way respond to the notice.

In addition to the foregoing findings, the referee found that on April 28, 1976, respondent had received a private reprimand from the board based upon respondent's having written some insufficient funds checks and having commingled his trust and office accounts.

Based upon the foregoing findings, the referee submitted the following recommendation:

Therefore, the Referee recommends that Mr. Kintz be suspended from the practice of law by the Supreme Court for a period of six months, and that four of the six months be lifted upon Mr. Kintz making a diligent effort to return any papers belonging to Charles Red Bird to Mr. Red Bird; and by returning any monies and papers received from Irving Shapiro to Mr. Shapiro, such activities to be monitored by the Disciplinary Board; and that the four months be lifted whenever said Board determines that Mr. Kintz has done all that is possible to rectify the situation.

Further, that another condition of the four months' suspension being lifted is that Mr. Kintz formally, in writing, assures the Supreme Court that in the future he shall promptly accede to any requests from the Disciplinary Board as the law allows such Board to make requests concerning the activities of the attorney.

In reaching this recommendation, the referee commented that respondent had completely ignored the disciplinary procedures carried out by the board pursuant to the rules of disciplinary procedure set forth in SDCL ch. 16–19.

Our review of the record leaves us with no doubt but that the referee's findings are fully supported by the evidence submitted, and accordingly we accept and adopt them in full.

We turn, then, to the matter of the appropriate discipline to be imposed.

Respondent was admitted as a member of the bar on July 29, 1965, and has been engaged in the practice of law since that date. His office is presently located in Dupree. In addition to his law practice, respondent operates abstract companies in Ziebach and Dewey Counties. He and his sons operate theaters in Dupree, Timber Lake, and Eagle Butte. In addition to these business interests, respondent also maintains a license from the Division of Motor Vehicles to sell used cars. The picture that emerges from respondent's candid testimony before the referee is that of an individual who has been engaged in many business and civic activities and who apparently has had a long-standing inability to give prompt attention to matters entrusted

to him by his clients. Respondent testified that in August of 1980 one of his sons had to be taken to Rochester, Minnesota, for tests and treatment for a kidney problem. Also, during August and September of 1980 respondent spent about twenty working days out of his office in connection with his work as a member of the board of the Northwest Area Alcohol, Drug, and Mental Health Program and his participation as a member of the District V Crime Commission. Respondent has also served as vice chairman of the board of his church. In addition to these civic and public duties, respondent has for a number of years accepted all of the court appointments in criminal cases in the eastern counties of the Eighth Judicial Circuit.

Respondent acknowledged that he had acted in an irrational manner in failing to respond to the numerous inquiries made with respect to the matters under investigation.[4] He acknowledged that he had been grossly negligent in his professional capacity and that he was guilty of the charges set forth in the accusation. In response to the referee's request for a reason for his lack of response to the board's inquiries, respondent replied: "Quirk in my personality." When the referee followed with a question about the future, respondent replied: "I don't know."

As we said in *In re Kunkle*, 88 S.D. 269, 295, 218 N.W.2d 521, 536 (1974):

> The purpose of a disciplinary proceeding is not to punish an attorney but to remove from the profession a person whose misconduct has proved him unfit to be entrusted with the duties and responsibilities belonging to the office of an attorney, . . . and for the purpose of protecting the public from further wrongdoing on the part of an attorney (citations omitted) . . . .

See also *Matter of Weisensee*, 296 N.W.2d 717 (S.D.1980); *Matter of Voorhees*, 294 N.W.2d 646 (S.D.1980); *Matter of Walker*, 254 N.W.2d 452 (S.D.1977); *In re Rude*, 88 S.D. 416, 221 N.W.2d 43 (1974).

We have not here a case of criminality in the sense of dishonesty or a deliberate defalcation. For whatever reason that remains hidden in his psyche, respondent could not bring himself to perform his professional obligations to his clients in a timely manner. Nonetheless, the clients suffered as much as though respondent had acted out of evil motive. Accordingly, we must take such action as is necessary to protect the public from future neglect by respondent.

We conclude that a one-year period of suspension is warranted by the record before us. In reaching this decision, we have taken into account respondent's failure to respond to the inquiries from his clients and from the board. We believe that what was recently said by the Supreme Court of Wisconsin is applicable here:

> Because the respondent has a history of failing to respond to the Board and because he failed to cooperate in the disposition of an action pending in circuit court by failing to respond to correspondence from both opposing counsel and the presiding judge, we believe that a sanction more severe than the public reprimand recommended by the referee is warranted . . . .

*In re Kennedy*, 104 Wis.2d 1, 309 N.W.2d 843, 844 (1981). This Court said as much in *In re Rude*, supra, with respect to the consequences visited upon those attorneys who fail to respond promptly to inquiries from the board charged with the responsibility of investigating complaints of unprofessional conduct. Moreover, the duty to respond promptly and appropriately is clearly imposed upon every attorney under the provisions of SDCL 16–19–54.

Accordingly, an order will be entered suspending respondent from the practice of law for a period of one year. Respondent may file a petition for reinstatement with the board pursuant to SDCL 16–19–84 at the conclusion of six months of the period

---

4. We note that respondent failed to appear at the hearing in this Court on the referee's find-ings and recommendation.

of suspension. Such petition shall include a showing that respondent has complied fully with the conditions set forth in the referee's recommendation regarding the return of moneys and papers belonging to Mr. Shapiro and Mr. Red Bird, those conditions being expressly adopted by this Court. Respondent shall also pay the costs of this proceeding.

An appropriate order will be entered forthwith.