Timothy L. HOELLER, Plaintiff–Appellant,

v.

EATON CORPORATION, Defendant–Appellee.

Nos. 97–3169, 97–3737.

United States Court of Appeals, Seventh Circuit.

Argued April 9, 1998.

Decided July 10, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 18, 1998.

Mary J. Hoeller (argued), Dutton & Overman, Indianapolis, IN, Mark M. Leitner, Kravit & Gass, Milwaukee, WI, for Plaintiff–Appellant.

Robert H. Duffy (argued), Pamela M. Ploor, Quarles & Brady, Milwaukee, WI, for Defendant–Appellee.

Before CUMMINGS, CUDAHY and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

Timothy Hoeller suffers from bipolar affective disorder, which is a condition characterized by mood swings from depression to mania. From 1988 until 1995, Hoeller worked as a research engineer for the defendant, Eaton Corporation ("Eaton"), at its research and development center in Milwaukee, Wisconsin. On May 3, 1995, Eaton terminated Hoeller's employment, prompting him to file this suit alleging that the termination violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213. Hoeller also alleged that Eaton failed to make a reasonable accommodation for his disability as required by the ADA, and that his discharge was wrongful under Wisconsin law. The district court granted summary judgment in favor of Eaton on the ADA claims and the wrongful discharge claim. Hoeller appeals, and this Court affirms. Hoeller also appeals from the district court's award of costs in Eaton's favor, a determination that this Court also affirms.

## I. HISTORY

Hoeller's duties at Eaton included materials analysis, characterization, and testing of industrial parts containing both polymer and nonpolymer materials. Beginning in 1993, Hoeller's supervisor was Selami Pusatcioglu, the technology leader of the Polymer and Composites Group. In June 1994, Pusatcioglu evaluated Hoeller's work performance for the period between January 1993 and March 1994 as "marginal," citing specifically Hoeller's lack of sufficient knowledge concerning polymers and plastics. Knowledge in these two areas had become increasingly important as Eaton reorganized its research and development operations and acquired a distribution and control business unit from Westinghouse. Hoeller claims that Pusatcioglu's evaluation was unfair because it reflected his refusal to give Hoeller adequate training in the polymer and plastics areas.

During the year or so following this "marginal" rating, Pusatcioglu met with Hoeller a number of times to discuss Hoeller's projects, with the aim of improving his work performance. Hoeller claims that these meetings increased his feelings of stress, thereby causing his performance to suffer. He faults Pusatcioglu for not predicting that this would be the result, given that Pusatcioglu was allegedly aware of Hoeller's disorder. He also claims that Pusatcioglu made derogatory comments about the finger tremors that Hoeller suffered as a side effect of the medication he took to control his condition.

In June 1994, shortly after the "marginal" rating, Hoeller met with Pusatcioglu and Sharon Hall, a human resources representative, to discuss Hoeller's performance. After the meeting, Hoeller left a voice mail message for Hall suggesting that the performance problems might be resolved by transferring Hoeller to another group or otherwise separating him from Pusatcioglu. Hoeller admits that he did not inform Hall of his bipolar disorder at this time or in any way imply that the transfer he suggested was meant as an accommodation of a disability.

On March 29, 1995, after several attempts to obtain an appointment with Hall, Hoeller encountered Hall by chance and seized the opportunity to tell her that he felt a great deal of stress from the close scrutiny under which Pusatcioglu was keeping him. Hoeller gave Hall a letter dated two days earlier stating that he had been diagnosed with bipolar disorder and requesting a reasonable accommodation in the form of a transfer to another department. The letter stated that the "stalemate" with his supervisor (Pusatcioglu) would make it difficult for Hoeller to control his disorder, but did not otherwise explain how a transfer would accommodate his condition.

Hall responded to Hoeller's letter by asking him to obtain a note from his treating doctor informing Eaton precisely what the company could do to accommodate Hoeller's condition. Hoeller saw his treating psychiatrist soon after, on April 5, 1995. On the advice of the doctor and Hoeller's attorney, however, Hoeller never submitted the requested letter discussing possible accommodations.

On April 12, 1995, Hoeller sent a memorandum to Hall requesting a transfer. He complained that Pusatcioglu had only met with him three or four times since the performance evaluation, despite a promise that these meetings would be biweekly. He also wrote that he felt Eaton had failed to afford him the technical training to which he was entitled, and that Pusatcioglu had threatened to terminate him at least twice. This memorandum apparently made no mention of Hoeller's bipolar disorder.

Meanwhile, in late March or early April 1995, Pusatcioglu prepared to complete Hoeller's performance evaluation for the previous year. After concluding that Hoeller's performance was still "marginal," Pusatcioglu discussed the evaluation with Hall, who then discussed the matter with her supervisor, Robert Chapple, and Pusatcioglu's supervisor, Greg Chen. On April 28, these four individuals met in Chapple's office to discuss Hoeller's employment with Eaton. At this meeting, Chapple asked Pusatcioglu to evaluate whether Hoeller's position was needed in the department, independently of Hoeller's actual performance in the position. Pusat-

cioglu responded that the shift to a greater proportion of polymer-based work had rendered Hoeller's "skill set" unnecessary and that the group would be better served by eliminating the position and hiring both a higher level engineer with polymer expertise and a lower level technician instead. Thus it was Pusatcioglu's view that Hoeller's position should be eliminated regardless of the quality of Hoeller's performance. Based on this recommendation, the four people at the meeting decided that Eaton would eliminate Hoeller's position and terminate his employment with the company.

On May 3, 1995, Hoeller was informed that Eaton was eliminating his job. That morning, Hoeller met with Hall, Pusatcioglu, and Chen to discuss the decision. At this meeting, the three supervisors informed Hoeller that his termination was due to the lack of need for his skills, and that it was not based on his performance problems. Neither Hoeller nor the supervisors mentioned Hoeller's bipolar disorder at this meeting.

After exhausting his administrative remedies, Hoeller filed suit against Eaton on April 12, 1996. After some amendments, his complaint alleged that Eaton violated the ADA by failing to accommodate Hoeller's disability and by terminating him, and that the termination was also wrongful under Wisconsin law because it was motivated by fear that Hoeller would file a worker's compensation claim.

On August 13, 1997, the district court granted summary judgment for Eaton on all remaining claims.[1] As to the ADA claims, the court held that Hoeller had not presented evidence that he was a "qualified individual with a disability" under the statute. With respect to the state law wrongful discharge claim, the court decided that the alleged reason for the discharge did not fit within Wisconsin's narrow public policy exception to the general rule of at-will employment. Following the judgment, Eaton submitted a bill of costs to the clerk of the district court requesting costs pursuant to Federal Rule of Civil Procedure 54(d), 28 U.S.C. § 1920, and local rules. After briefing, the clerk taxed

costs of $3,897.95 plus interest in Eaton's favor. Hoeller appeals both the grant of summary judgment and the taxing of costs.

## II. DISCUSSION

### A. ADA Claims

■ This Court reviews the district court's grant of summary judgment *de novo.* *Cornfield by Lewis v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1320 (7th Cir.1993). We apply the same standard as the district court, granting summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We construe the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in favor of that party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ The ADA prohibits covered employers from discriminating against "a qualified individual with a disability because of the disability" with regard to such matters as hiring, advancement, and discharge. 42 U.S.C. § 12112(a). Hoeller, therefore, must show that he was a qualified individual with a disability at the time that Eaton allegedly refused to accommodate him and then terminated him. See *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1002 (7th Cir.1998) (prima facie case under ADA includes showing that plaintiff is qualified individual with disability). This requirement has two central elements: the individual must be "qualified," and he or she must have "a disability." The district court did not question whether Hoeller was qualified for the position he held at Eaton, but rather decided the case on the ground that he did not suffer from a disability as defined by the ADA.

Under the ADA, an individual may establish a disability by any of three definitions. He may show either "(A) a physical or men-

---

1. The complaint apparently had also included a claim under Wisconsin's Open Records Law. This count was dismissed on February 19, 1997 and is not an issue on this appeal.

tal impairment that substantially limits one or more of the major life activities of [the] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *Duda v. Board of Educ. of Franklin Park Pub. Sch. Dist. No. 84,* 133 F.3d 1054, 1058 (7th Cir. 1998). "Major life activities" include such basic matters as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

Hoeller argues that his bipolar disorder substantially limits him in the major life activity of working. The district court's rejection of that contention was both thorough and correct, and in any event Hoeller comes close to abandoning the argument in this Court. Here he argues instead that his disorder substantially limits his "thought processes" and his "communication skills and interpersonal relationships." The argument concerning "communication skills and interpersonal relationships" appeared, at least in rudimentary form, in Hoeller's submissions to the district court, and that court rejected it as part of its discussion of Hoeller's ability to work. Nothing in the record convinces us that the lower court was in error on this point.

The claim as to "thought processes" was not pressed below, but rather appears for the first time in Hoeller's opening brief to this Court. Arguments raised for the first time on appeal are waived. *Weigel v. Target Stores,* 122 F.3d 461, 464 (7th Cir.1997). This Court will therefore not evaluate Hoeller's argument that he is substantially limited in his "thought processes." We note in passing that the argument is weak in any event, for many of the same reasons that lead us to affirm the district court's decision that Hoeller was not substantially limited in the major life activity of working.

Hoeller argues alternatively that he was disabled under the ADA either because he had a record of a substantially limiting impairment or because Eaton regarded him as being substantially limited in a major life activity. He makes the first claim in only a cursory fashion, however, and the evidence he cites to support the second claim is insufficient.

Hoeller quite simply has not shown that he is or was a qualified person with a disability as required under the ADA. Although his bipolar affective disorder was undoubtedly a difficult condition to live with, Hoeller has not proved that it limited him substantially in any major life activity. The district court was therefore correct in granting summary judgment for Eaton on Hoeller's ADA claims.

## B. Wrongful Discharge Claim

Hoeller argues that Eaton terminated him because the company believed Hoeller was going to file a worker's compensation claim. The district court held that this allegation did not fit within the narrow exception that Wisconsin recognizes to the principle of at-will employment. In order to state a claim for wrongful discharge in Wisconsin, an employee must allege that he or she was terminated for refusing a command to violate a public policy that is embodied in statutes, constitutions, or administrative rules. See *Hausman v. St. Croix Care Ctr.,* 214 Wis.2d 654, 571 N.W.2d 393, 398 (1997); *Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 335 N.W.2d 834, 840 (1983). Preparing to file a worker's compensation claim is not the same as refusing to violate the law. Even if a discharge for this reason were wrongful, the Wisconsin Worker's Compensation Act, Wis. Stat. § 102.35(3), would likely provide the exclusive remedy. See *Brockmeyer,* 335 N.W.2d at 842 n. 17 ("Where the legislature has created a statutory remedy for a wrongful discharge, that remedy is exclusive."). The district court properly rejected Hoeller's claim.

## C. Costs

Hoeller challenges the district court's taxation of costs against him in the amount of $3,897.95 plus interest. He argues that the award of costs was not justified by any statute or rule, that Eaton was not the "prevailing party" in the district court because this appeal is pending, and that the court did not make an explicit determination

that the costs taxed were reasonable and necessary to Eaton's case.

These arguments are unavailing. Federal Rule of Civil Procedure 54(d)(1) provides that the prevailing party shall be allowed costs other than attorneys' fees as a matter of course unless a statute or other rule states otherwise or the court specifically disallows such costs. Permissible costs are enumerated in 28 U.S.C. § 1920. Here, neither the ADA, the Federal Rules, nor the court's order precludes the award of costs to Eaton. Hoeller's claim that Eaton cannot be the prevailing party because the case has been appealed is specious; Eaton had all claims in the district court resolved in its favor and is the very definition of a prevailing party, regardless of the pendency of this appeal. Finally, the district court was not required to make specific findings with respect to the items claimed in Eaton's bill of costs. This Court will not disturb the lower court's taxation of costs.

## CONCLUSION

The district court did not err in granting summary judgment for Eaton on all of Hoeller's claims. Hoeller did not present evidence establishing that he was a qualified individual with a disability at the time of the relevant events. His wrongful discharge claim fails because the alleged reason for his firing does not fit within Wisconsin's narrow exception to the rule of at-will employment. Finally, the district court's taxation of costs against Hoeller comported with the Federal Rules of Civil Procedure. This Court affirms the district court in all respects.