165 F.3d 31
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Robert E. BRUENING, Plaintiff-Appellant,
v.
CONSTRUCTION WORKERS HEALTH FUND, Defendant-Appellee.
 No. 97-3709.
 United States Court of Appeals, Seventh Circuit.
 Argued April 13, 1998.
Decided Sept. 25, 1998.
 
 Appeal from the United States District Court for the Eastern District of Wisconsin, No. 95 C 410. Charles N. Clevert, Judge.
 Before Hon. WILLIAM J. BAUER, Hon. JOEL M. FLAUM, Hon. DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Robert Bruening is a retiree covered by the Construction Workers Health Fund ("Fund"). His wife Dorothy Bruening was also covered by the retiree provisions of the Fund's medical plan ("Plan"). This suit arises from the Fund's decision to deny coverage for a cancer treatment Dorothy had undergone, on the ground that the Plan excluded the procedure in question. After exhausting his internal remedies with the plan adminstrators, Robert sued the Fund under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. On cross-motions for summary judgment, the district court granted the Fund's motion and denied Robert's. Robert appealed.
 
 
 2
 * Dorothy, who suffered from recurrent large cell lymphoma, underwent high-dose chemotherapy in the spring of 1993. To survive this form of cancer treatment a patient must preserve some of her bone marrow, which contains the stem cells that produce white blood cells, since the chemotherapy destroys the marrow. The preserved marrow is then reintroduced into her body after the chemotherapy. In many cases, this is achieved through an "autologous bone marrow transplant" ("ABMT"), in which the marrow is surgically removed directly from the bone and then reintroduced through a catheterized major blood vessel.
 
 
 3
 Dorothy, however, suffered from a particularly unpleasant and pervasive form of cancer, and her doctors were worried that marrow drawn directly from her bones might carry with it cancerous cells that would re-contaminate her body. So, instead of recommending an ABMT, they advised her to opt for a "peripheral stem cell rescue" ("PSCR") treatment. In a PSCR, the patient is given drugs to stimulate the production of stem cells in the bone marrow and increase the otherwise very low number of stem cells floating free in the bloodstream. Stem cell-rich blood is then drawn out of the body, and the stem cells are separated from the blood in a process called pheresis. After the chemotherapy, the stem cells are reintroduced as they are in an ABMT--through a catheterized major blood vessel. If all goes according to plan, the stem cells re-seed themselves in the patient's bones, and begin to grow and produce white blood cells again. If this step fails, the patient will die in short order. Already weakened by illness and damaging chemotherapy treatments, a patient has little chance of surviving without an immune system.
 
 
 4
 Dorothy survived the PSCR and chemotherapy process (although she died before this suit was filed), but she and her husband were saddled with $223,163.18 in medical bills. When they submitted a claim to the fund, it took the position that the PSCR and the associated chemotherapy gave rise to nonreimbursable expenses, citing the Plan document, which limited coverage for transplants and related services to active (as opposed to retired) employees and their covered dependants. The Fund found that just $591 of the six-figure bill was unrelated to Dorothy's excluded transplant, and therefore reimbursable.
 
 
 5
 The Bruenings appealed this highly unfavorable decision to the Board of Trustees of the Fund (we will refer to the full board, its executive committee, and the plan administrative manager as the "Fund" since all performed the same function here--plan administration). For the appeal, the Fund gathered up all the available medical records and other paperwork and sent them off to an independent medical review firm, Medical Review Institute of America, Inc. ("MRI") for an interpretation. MRI reported back that unlike a conventional blood transfusion, an ABMT is a transplant, and therefore not covered for retirees under the Plan. (If Dorothy underwent a PSCR, why did MRI report back on an ABMT? Because all of the hospital's paperwork referred to "ABMT," not "PSCR." We comment further on this terminology debate below.) Relying on its own review and on MRI's report, the Fund denied coverage. Although the Plan document excluded coverage of both organ and tissue transplants for retirees and their covered dependants, neither the MRI report nor the Fund's notification letter to the Bruenings specified which type of transplant (organ or tissue) Dorothy's ABMT was.
 
 
 6
 A few months later, the Bruenings appealed again, this time pointing out that MRI apparently had believed that Dorothy had undergone an ABMT, and that this error could be dispositive. The Fund agreed to hear the appeal, and sent off a fresh round of materials to MRI, which again concluded that there was no coverage, this time because although the stem cells are drawn from the blood in a PSCR, they are: (1) simply tissue suspended in the blood, rather than a functioning part of the blood; (2) returned to the patient by the same means as in an ABMT (catheterization followed by re-implantation in the marrow); and (3) "transplanted" in the same sense that marrow is in an ABMT. In this report, MRI explicitly concluded that the PSCR was a "tissue" transplant. Again, the Fund denied coverage based on the MRI report.
 
 
 7
 Disappointed again, the Bruenings sued the Fund in federal district court under ERISA, 28 U.S.C. § 1132, claiming that the Fund had arbitrarily and capriciously refused coverage in violation of the provisions of the Plan. Reviewing, quite properly, only the Fund's decision in the Bruening's second and final appeal, the court concluded that the terms of the Plan were unambiguous, that the Fund had acted neither arbitrarily nor capriciously, and that the Fund's decision was a reasonable interpretation of the terms of the plan. This appeal followed.
 
 II
 
 8
 Normally, in a case like Robert's--an appeal from summary judgment granted to a defendant ERISA plan administrator--we review the district court's decision de novo, which means that we engage in the same exercise as the district court, and therefore affirm unless the Fund's decision to deny coverage was arbitrary and capricious. Since the Plan document endowed the Fund with authority to interpret the terms of the Plan, we would be required to accept the Fund's reading of the Plan document so long as it was not "downright unreasonable." Donato v. Metropolitan Life Ins. Co., 19 F.3d 375, 380 (7th Cir.1994). In this case, however, we need not engage in even this relatively gentle probing of the Fund's decision making, because Robert has failed to bring a genuine challenge to the judgment granted to the Fund by the district court.
 
 
 9
 Robert's strategy on appeal involves two arguments, the first of which is irreparably flawed. He argues that Dorothy's PSCR with high-dose chemotherapy was not an "organ" transplant, completely ignoring the "tissue" transplant provision of the Plan document and the MRI report that defines a PSCR as a "tissue" transplant. Unfortunately for Robert, neither the Fund nor the district court thought that the treatment in question was an organ transplant. Relying on the MRI report, the Fund decided that it was a tissue transplant. The district court refused to overturn that decision. An argument that addresses only organ transplantation is irrelevant to a challenged denial of coverage for tissue transplantation, at least when the Plan document in question, and the tribunal interpreting it, distinguish between the two. Even an unreasonably broad reading of the Fund's decision--that the Fund held that Dorothy's PSCR and high-dose chemotherapy was both an organ transplant and a tissue transplant--would not help Robert salvage this argument, since even then it would fail for lack of a challenge to the tissue-based alternative ground for the Fund's decision. Robert challenged either none or at most one, but certainly not all, of the grounds for the Fund's decision that Dorothy's treatment was a transplant. As a result, he has waived the argument that the Fund was arbitrary and capricious when it treated Dorothy's treatment as a tissue transplant. See Kauthar SDN BHD v. Sternberg, 149 F.3d 659, 667-69 (7th Cir.1998).
 
 
 10
 The second argument--that most or all of Dorothy's treatment was reimbursable either because the PSCR was merely part of a covered chemotherapy treatment or because even if the PSCR was not covered, the rest of Dorothy's treatment, if broken into its component parts, was covered by various other provisions of the Plan--also fails, because this is the first time it has appeared. Arguments raised for the first time on appeal are waived. Hoeller v. Eaton Corp., 149 F.3d 621, 625 (7th Cir.1998).
 
 
 11
 Robert Bruening has presented only arguments that are insufficient or waived, regardless of any theoretical merit they may have. We therefore have no comment on the substance of the arguments presented in this appeal, and we AFFIRM the judgment of the district court.