#26659-a-DG

**2013 S.D. 93**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *


IN RE: APPLICATION OF
JACOB BENJAMIN HENRY


* * * *


JACOB B. HENRY
Iowa City, Iowa                                         Pro se applicant and appellant.


MARTY J. JACKLEY
Attorney General

KIRSTEN E. JASPER
Assistant Attorney General
Pierre, South Dakota                                   Attorneys for appellee
                                                       Board of Bar Examiners.


* * * *


CONSIDERED ON BRIEFS
ON NOVEMBER 4, 2013

OPINION FILED **12/18/13**

GILBERTSON, Chief Justice

[¶1.]        On December 4, 2012, the South Dakota Board of Bar Examiners (the

Board) conducted a formal hearing to determine whether Jacob Henry (Henry)

possessed the good moral character necessary for admission to practice law in South

Dakota.  The Board recommended that Henry be denied admission to practice law

in the state.  Pursuant to SDCL 16-16-16, Henry seeks our review of the Board's

decision.

## Facts and Procedural History

[¶2.]        Henry began attending the University of South Dakota School of Law

in September 2007.  Henry testified that during his second year of law school, he

visited the University of South Dakota Student Counseling Center (the SCC) with

his girlfriend to resolve some relationship issues.[1]  After his initial meeting, Henry

had an individual counseling session at the SCC on March 17, 2009.  He reported

having auditory, visual, and tactile overstimulation, which affected his

relationships, schoolwork, and employment.  He also reported experiencing some

anxiety and a period of five months in which he had experienced auditory

hallucinations.

[¶3.]        On March 24, 2009, Henry again visited the SCC.  He reported that he

had experienced racing thoughts followed by a great deal of energy and then a

period of feeling down.  Because of these reports, Henry took the Mini International

Neuropsychiatric Interview (MINI).  The interview indicated that he "met criteria

---

1.    The Board did not receive a record of this session.  Henry objected to
      providing the specifics of the session under the Health Insurance Portability
      and Accountability Act of 1996 (HIPAA) because it involved another patient.

for both Major Depressive Episode and Manic Episode, making a diagnosis of Bipolar Disorder most likely." Henry was diagnosed with Bipolar II Disorder on March 30, 2009.

[¶4.] On April 7, 2009, Henry visited the Sanford Vermillion Clinic to address his level of depression and anxiety. He was prescribed Symbyax, an antidepressant mood stabilizer. On April 14, Henry informed his counselor at the SCC that he was taking Symbyax. Two weeks later, however, Henry reported to his SCC counselor that he had stopped taking Symbyax "due to financial constraints." He also reported that he was depressed, and since he had stopped taking medication, his mood fluctuated frequently. However, at his hearing before the Board, Henry testified that it was actually the "horrific" side effects of the medication rather than "financial constraints" that caused him to discontinue taking the medication.

[¶5.] Henry completed his second year of law school in May 2009. That summer he had an internship in Sioux City but continued to live in Vermillion. For most of the summer, Henry discontinued counseling because he had not had "any episodes" and he was no longer affected "in any way and didn't really see the point in wasting the counselor's time."

[¶6.] Henry returned to the SCC on August 11, 2009. He testified that he informed the SCC that his prescribed medication "seemed to be 'stabilizing' as he

had not been as fatigued."[2]  This was Henry's last counseling session of record while at the University of South Dakota.[3]

[¶7.]        On the evening of February 7, 2010, during his third year of law school, Henry was in downtown Vermillion.  Henry testified that after consuming two alcoholic drinks, he drove home.  He was stopped by law enforcement and arrested for driving under the influence.  He had a BAC of .09 and subsequently pleaded guilty to the reduced charge of reckless driving in March 2010 and paid a fine.  Shortly thereafter, on April 5, 2010, Henry was drinking with some friends at a house in Vermillion when he received a call from a friend requesting a ride home from downtown Vermillion.  Henry testified that the friend feared for her safety, so he decided to give her a ride home.  After picking up his friend, Henry was stopped by law enforcement on the drive home.  Because he had a BAC of .104, Henry was arrested and charged with driving under the influence.  Henry pleaded guilty to the DUI on June 1, 2010, paid a fine, and lost his license for thirty days.

[¶8.]        Henry graduated from the University of South Dakota School of Law in May 2010.  Prior to his graduation, Henry had applied to take the July 2010 Iowa bar examination.  In light of his arrests, the Iowa Board of Bar Examiners (Iowa Board) requested that Henry complete a Substance Use and Need for Treatment evaluation.  The evaluation determined that "Henry does not meet the criteria for a

2.      The Board indicated that there were no records relating to the nature or purpose of this prescription.

3.      Henry testified that the decision to terminate the counseling services was a mutual decision with his counselor.  The Board could not find support for this in the counselor's notes.

substance related disorder and there is no indications of substance use interfering with his ability to practice law." Nevertheless, the Iowa Board did not allow Henry to sit for the July exam because the two arrests were too recent to allow for his admission to the Iowa bar.

[¶9.]     The Iowa Board also requested that Henry undergo a psychological evaluation. Henry returned to the SCC to receive the evaluation in June 2010. The evaluation indicated that Henry exhibited low levels of anxiety. It also indicated that Henry "does not presently meet criteria for any psychological disorders." It stated that his "Bipolar II disorder is considered to be in full remission as it seems that he has not experienced either a depressed or hypomanic episode in approximately 1 year." The evaluation concluded, "There is no evidence to suggest any impairment in [Henry]'s ability to practice law in the state of Iowa due to problems in his psychological functioning."

[¶10.]     Henry subsequently applied to take the February 2011 Iowa bar exam. This time the Iowa Board allowed him to sit for the exam. Henry received a passing score on the February exam and was admitted to practice law in Iowa in April 2011.

[¶11.]     Following his admission to the Iowa bar, Henry sought admission to the South Dakota bar. Henry took the South Dakota bar examination in July 2012. Although he received a passing score on the exam, the Board determined that Henry's application did not meet Henry's burden to prove by clear and convincing evidence that he possessed the good moral character necessary for admission to the South Dakota bar. As a result, the Board scheduled a hearing on the matter for December 4, 2012.

[¶12.] Shortly after taking the South Dakota bar exam, Henry went to the University of Iowa Hospitals and Clinic (the UIHC) in August 2012. Henry testified that he had just acquired health insurance through his employer and wanted to follow up on his bipolar disorder. At the time of the visit, Henry was experiencing some depression. Additionally, he indicated that he had one episode of low mood about once a year with each episode lasting about two weeks. Henry also thought he might have a milder form of mania exhibited by racing thoughts and excessive energy. The UIHC evaluation concluded that Henry had clear manic/hypomanic symptoms in his lifetime, but it was "less likely for him to have bipolar disorder." Dr. Thisayakron at the UIHC recommended that Henry try medication and counseling. He also prescribed Sertraline for anxiety and low mood. Henry was expected to follow up in five to six weeks; however, Henry did not follow up with the UIHC. Henry testified that he discontinued taking Sertraline due to "severe side-effects." He also indicated that he "clearly . . . did not have bipolar disorder or any disorder affecting [his] quality of life or [his] abilities." Thus, he "decided it was not worth the money to continue."

[¶13.] Henry appeared before the Board on December 4, 2012.[4] After meeting with Henry, the Board concluded that Henry did not meet his burden to establish his good moral character by clear and convincing evidence. In reaching its conclusion, the Board noted that Henry did not appear to be forthright in his presentation to the Board. The Board believed that Henry withheld some of his mental health records. It also expressed concern at Henry's decisions to discontinue

---

4. Henry was 30 years old at the time of the hearing.

recommended treatments without consulting the prescribing physician. The Board also noted periods of Henry's life that were affected by his mental health condition. Additionally, the Board believed that Henry showed disrespect to its members. Finally, the Board stated that Henry's DUIs evidenced poor judgment and a lack of maturity. The Board concluded that when viewed in totality, the unanswered questions about the status of Henry's mental health combined with his lack of good judgment, lack of candor, and unreliability demonstrated that he failed to meet his burden to establish his good moral character under SDCL 16-16-2.2.

[¶14.] Henry seeks review of the Board's decision to this Court. Henry argues that the Board violated Title II of the Americans with Disabilities Act by denying him the ability to practice law in South Dakota due to his disability.

## Standard of Review

[¶15.] Henry seeks review of the Board's decision under SDCL 16-16-16. SDCL 16-16-16 allows an applicant who is aggrieved by a decision of the Board to request that this Court review his or her application. We have noted, "The ability to receive or reject an applicant for the bar is inherently a function of the judicial system. This [C]ourt has the authority to oversee all applications for admission." *In re Widdison*, 539 N.W.2d 671, 675 (S.D. 1995) (quoting *In re Shemonsky*, 379 N.W.2d 316, 318 (S.D. 1985)). "[U]nder SDCL 16-16-16, this Court is the final arbiter of the decisions of the Board of Bar Examiners, and as such, we can accept or reject the Board's conclusion." *Id.* (citing *Shemonsky*, 379 N.W.2d at 318). "[W]e perform a de novo review of both questions of law and fact in all bar admission cases." *Id.* But, "we will carefully consider the recommendations of the Board

which had the opportunity to hear live witnesses." *Id.* (citing *In re Discipline of Stanton*, 446 N.W.2d 33, 35 (S.D. 1989)).

[¶16.] Additionally, we do not take the decision to admit Henry to the bar in Iowa as definitive in South Dakota. *See In re Reciprocal Discipline of Rokahr*, 2004 S.D. 66, ¶ 15, 681 N.W.2d 100, 106-07; *see also Widdison*, 539 N.W.2d at 675. This is because:

> The [South Dakota] Supreme Court has "inherent power to supervise the conduct of attorneys who are its officers," SDCL 16-19-20, and the affirmative duty to govern the discipline of members of the bar. S.D. Const. art. V, § 12. A license to practice law in South Dakota "is a continuing proclamation by the Supreme Court that the holder is fit to be entrusted with professional and judicial matters and to aid in the administration of Justice." SDCL 16-19-31. These are obligations that this Court takes "most seriously." *In re Discipline of Reynolds*, 2009 S.D. 9, ¶ 49, 762 N.W.2d 341, 352.

*In re Discipline of Tornow*, 2013 S.D. 61, ¶ 38, 835 N.W.2d 912, 921-22.

[¶17.] In determining whether to admit an individual to the South Dakota bar, we must remain mindful of the fact that since 1928 we have reiterated:

> [T]he right to practice law is not in any proper sense of the word a right at all, but rather a matter of license and high privilege. Certainly, it is in no sense an absolute right. It is in the nature of a franchise to the enjoyment of which no one is admitted as a matter of right, but only upon proof of fitness and qualifications which must be maintained if the privilege is to continue in enjoyment.

*In re Egan*, 52 S.D. 394, 398, 218 N.W. 1, 2-3 (1928) (internal quotation marks omitted); *see also Widdison*, 539 N.W.2d at 675.

### Analysis and Decision

[¶18.] Henry's primary argument is that the Board's decision to deny his application to practice law was based on his diagnosis for bipolar disorder. Henry

asserts that this was unlawful discrimination against him under Title II of the Americans with Disabilities Act (ADA). 42 U.S.C. § 12101. Henry contends that he is of good moral character and should be admitted to the South Dakota bar. To address Henry's claim, we first review the Board's decision to deny Henry admission. We then must decide whether the Board may consider Henry's history of bipolar disorder in determining whether to license him to practice law.[5]

[¶19.] The ADA is a federal civil rights statute designed to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane,* 541 U.S. 509, 516-17, 124 S. Ct. 1978, 1984, 158 L. Ed. 2d 820 (2004).

[¶20.] Henry asserts that the Board violated Title II of the ADA, which states:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Under Title II, a public entity includes "any State or local government," as well as "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1).

---

5. Henry does not challenge whether the questions posed in the character and fitness portion of his bar application violate the ADA.

Additionally, the ADA's implementing regulations provide in part that "[a] public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability[.]" 28 C.F.R. § 35.130(b)(6); *see also Ware v. Wyo. Bd. of Law Exam'rs*, 973 F. Supp. 1339, 1353 (D. Wyo. 1997). Finally, we have acknowledged that Title II of the ADA applies to the administration of the South Dakota Bar Exam. *See In re Reasonable Testing Accommodations of LaFleur*, 2006 S.D. 86, 722 N.W.2d 559. Thus, when choosing to license an individual to practice law in the State of South Dakota, this Court and the Board must adhere to the ADA.

[¶21.]     To advance his claim of unlawful discrimination under the ADA, Henry must first establish that he has a disability. Under the ADA, disability means "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(a). The definition includes one who is "regarded as having such an impairment." 42 U.S.C § 12102(1)(c). On his bar application, Henry disclosed that he had previously been diagnosed with bipolar disorder. However, whether Henry is actually bipolar is unclear. The Board argues that because Henry's diagnosis is unclear, he is not disabled under the ADA. Henry seems to agree that his diagnosis is uncertain. Meanwhile, Henry's recent medical records appear to confirm that Henry may not be bipolar. Thus, whether Henry currently has a "mental impairment that substantially limits one or more major life

activities" is unclear. *See* 42 U.S.C. § 12102(1)(a). Given this uncertainty, we cannot conclude that Henry is disabled under the ADA.[6]

[¶22.] While Henry may not have a disability under the ADA, it does appear that the Board at least perceived that Henry was bipolar. "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(a). Henry notes that his character and fitness hearing was prompted in part by the indication on his bar application that he had suffered from bipolar disorder in the past. Additionally, Henry highlights that the Board made a number of inquiries into his mental health. Finally, our reading of the Board's conclusions reveals that the Board had concerns about the status of Henry's mental health. Thus, in deciding to hold a fitness hearing and in making its ultimate conclusion not to admit Henry, the Board considered, at least in part, the possibility that Henry may suffer from bipolar disorder. Therefore, it would appear that Henry was at least perceived to have a disability. *See ACLU of Ind. v. Individual Members of the Ind. State Bd. of Law Exam'rs*, 2011 WL 4387470, at *5 (S.D. Ind. Sept. 20, 2011).

---

6. We note that there is some dispute as to whether bipolar disorder is a mental impairment that substantially limits one or more major life activities. *See Hoeller v. Eaton Corp.*, 149 F.3d 621, 625 (7th Cir. 1998) ("Although his bipolar affective disorder was undoubtedly a difficult condition to live with, Hoeller has not proved that it limited him substantially in any major life activity.").

[¶23.]     If Henry can establish that he was perceived to have a disability, he must also show that he was a "qualified individual."  *See* 42 U.S.C. § 12132.  Title II of the ADA defines "qualified individual" as:

> [A]n individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, *meets the essential eligibility requirements* for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2) (emphasis added).

[¶24.]     Henry fails to articulate how he was a "qualified individual."  Beyond passing the South Dakota bar exam, an applicant who wishes to practice law in South Dakota has the burden of proving good moral character "by clear and convincing evidence."  SDCL 16-16-2.2.  The term "good moral character" in SDCL 16-16-2.1 "includes but is not limited to qualities of honesty, candor, trustworthiness, diligence, reliability, observance of fiduciary and financial responsibility, and respect for the rights of others and for the judicial process."  Good moral character is an essential eligibility requirement to practice law in this state.  SDCL 16-16-2; *Widdison*, 539 N.W.2d at 678.  Additionally, SDCL 16-16-2.3 provides the relevant conduct that may prompt further inquiry into an applicant's good moral character.  Such conduct may include: unlawful conduct; making of false statements, including omissions; misconduct in employment; acts involving dishonesty; evidence of mental or emotional instability; and denial of admission to the bar in another jurisdiction on character and fitness grounds.  SDCL 16-16-2.3.

"Any fact reflecting a deficiency of good moral character may constitute a basis for denial of admission" to the bar. SDCL 16-16-2.1.

[¶25.]        The Board reached its decision to deny Henry's admission based on a number of factors in SDCL 16-16.2.3. Henry does not address this in his brief. Instead, he argues that the Board based its decision on his prior diagnosis for bipolar disorder. The Board's findings do not support Henry's claim. The Board expressed concern that Henry provided incomplete health records and failed to produce all requested information.[7] The Board also noted that Henry produced no witnesses other than himself. Additionally, the Board highlighted Henry's two DUIs within two months, less than three years prior to its decision, which evidenced poor judgment and a lack of maturity. The Board also found that Henry showed disrespect toward it and its process. Finally, the Board expressed concern about unresolved issues regarding the status of Henry's mental health, as well as his pattern of discontinuing treatment. At no point did the Board state that Henry could not practice law in the State of South Dakota solely because of his diagnosis for bipolar disorder. Rather, it appears that the Board considered a variety of factors in recommending that Henry be denied admission to practice law in the

---

7.    There is some dispute about the records the Board was missing. Henry contends that he provided the Board with all that he reasonably could. The Board outlines a number of records it was missing. The Board was not provided a record of Henry's first consultation, which may have involved a joint session with his girlfriend. The Board also was not provided records pertaining to the prescription Henry was taking in August 2009.

state.[8] We agree that these factors, when viewed in totality, are significant. We conclude that because of all these factors, Henry has not met his burden of showing by clear and convincing evidence that he is fit to practice law in South Dakota. Thus, Henry was not a "qualified individual" under the ADA.

[¶26.]     Henry also argues that the extent of the Board's inquiry into his mental health diagnosis along with the length of his character and fitness review violated the ADA. Henry contends that his prior diagnosis for bipolar disorder subjected him to a more thorough review process than other applicants. He asserts that this process violated the ADA.

[¶27.]     The implementing regulations of the ADA state:

> A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered.

28 C.F.R. § 35.130(b)(8); *see also ACLU of Ind.*, 2011 WL 4387470, at *6. Therefore, a general approach that denies all applicants who indicate a history of bipolar disorder on their bar application could violate the ADA. However, the Board did not conduct a generalized approach in this case. This is not a case of a blanket exclusion or inclusion. Instead, the Board conducted an individualized assessment to determine whether Henry met the "essential eligibility requirements" to practice

---

8.     In addition to the Board's conclusions, it is important to note that Henry was initially rejected by the Iowa Board due to concerns about his character. Henry also had a substantial number of littering and speeding violations from 2002-2010, which prompted questions from the Board at his hearing.

law in the state. We conclude that the Board's individualized assessment of Henry's history of bipolar disorder did not violate the ADA.

[¶28.] We have long held, "A certificate of admission to the bar is a pilot's license which authorizes its possessor to assume full control of important affairs of others and to guide and safeguard them when, without such assistance, they would be helpless." *Reynolds*, 2009 S.D. 9, ¶ 49, 762 N.W.2d at 352 (quoting *Egan*, 52 S.D. at 402, 218 N.W. at 4). Therefore, an individualized assessment was necessary to determine whether Henry met the "essential eligibility requirements" to practice law in the state so as to protect the safety of future clients and the public. Additionally, when "questions of public safety are involved, the determination of whether an applicant meets 'essential eligibility requirements' involves consideration of whether the individual with a disability poses a direct threat to the health and safety of others." *Applicants v. Tex. State Bd. of Law Examr's*, 1994 WL 923404, at *6 (W.D. Tex. Nov. 11, 1994); *see also* 28 C.F.R. pt. 35, app. B. Whether an individual poses a direct threat to the safety of others must be based on:

> [A]n individualized assessment, based on reasonable judgment that relies on current medical evidence or on the best available objective evidence, to determine: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures will mitigate the risk.

28 C.F.R. pt. 35, app B; *see also ACLU of Ind.*, 2011 WL 4387470, at *7.

[¶29.] An individualized assessment of an applicant with a history of bipolar disorder is necessary to protect the public. Courts have routinely upheld bar application questions that ask whether an applicant has been treated for bipolar disorder, schizophrenia, paranoia, or any other psychotic disorder within a specific

timeframe. *See ACLU of Ind.*, 2011 WL 4387470, at *8; *O'Brien v. Va. Bd. of Bar Exam'rs*, 1998 WL 391019 (E.D. Va. Jan. 23, 1998) (upholding specific questions inquiring about prior diagnosis for bipolar disorder); *Applicants*, 1994 WL 923404 (upholding a limited inquiry into whether an individual had been diagnosed for bipolar disorder).

[¶30.]     The rationale for these inquiries is that "bipolar disorder, schizophrenia, paranoia, and psychotic disorders are serious mental illnesses that may affect a person's ability to practice law." *Applicants*, 1994 WL 923404, at *3; *see also ACLU of Ind.,* 2011 WL 4387470, at *8.  For instance, a Manic Episode, which can accompany bipolar disorder, may lead to the complete disregard of ethical concerns, even by those who are typically very conscientious.  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 359, 382 (4th ed. 1994).  One can only imagine the risk this may pose to clients, who often entrust an attorney with their livelihood, freedom, or even life.  Clients suffer as much from unintentional misconduct such as neglect as they would from the acts of an attorney caused by an intentional "evil motive." *Reynolds*, 2009 S.D. 9, ¶ 64, 762 N.W.2d at 355 (citing *In re Discipline of Kintz*, 351 N.W.2d 328, 331 (S.D. 1982)).  Additionally, "[t]he fact that a person may have experienced an episode of one of these mental illnesses in the past but is not currently experiencing symptoms does not mean that the person will not experience another episode in the future or that the person is currently fit to practice law." *Applicants*, 1994 WL 923404, at *3.  Contrary to Henry's assertion, an individualized assessment of his diagnosis for bipolar disorder

was necessary to evaluate whether his prior diagnosis may pose a threat to the public in the future.

[¶31.] Given that Henry indicated a prior diagnosis for bipolar disorder within five years of his application, it was necessary for the Board to obtain a complete picture of Henry's mental health history to determine whether potential symptoms of his bipolar disorder may affect his legal practice. It was also necessary that the Board receive Henry's records so that it could conduct an individual assessment of Henry's condition based on objective evidence from medical professionals. The Board's request was not unreasonable. As the Texas court reasoned in *Applicants:*

> Although a past diagnosis of the mental illness will not necessarily predict the applicant's future behavior, the mental health history is important to provide the Board with information regarding the applicant's insight into his or her illness and degree of cooperation in controlling it through counseling and medication. In summary, inquiry into past diagnosis and treatment of the severe mental illnesses is necessary to provide the Board with the best information available with which to assess the functional capacity of the individual.

*Id.*; *see also ACLU of Ind.*, 2011 WL 4387470, at *8. We find this reasoning persuasive. Because Henry had been diagnosed with bipolar disorder less than five years prior to seeking admission to practice law in South Dakota, it was reasonable and necessary for the Board to conduct a thorough individual assessment to determine whether his symptoms would make Henry unfit to practice law.[9]

---

9. We note that a time period of five years has been deemed a reasonable and necessary request for mental health records. *See Applicants*, 1994 WL 923404, at *7.

[¶32.]    The Board has a responsibility not just to the applicants, but also to the bar and citizens of its state to make sure that the attorneys it licenses are fit to practice. *Widdison*, 539 N.W.2d at 679. "Public confidence that the legal profession, under the supervision of this Court, can keep its affairs in order must be zealously maintained." *Id.* (quoting *In re Discipline of Tidball*, 503 N.W.2d 850, 856 (S.D. 1993)). To maintain that public confidence, this Court must only license attorneys that are emotionally and mentally fit to practice law. SDCL 16-16-2.3(1)(j). "The same zeal to protect the public from the [unqualified] within the bar must also be applied to the [unqualified] who seek to enter the bar." *Widdison*, 539 N.W.2d at 679; *see also In re Discipline of Laprath*, 2003 S.D. 114, 670 N.W.2d 41. "The Board would be derelict in its duty if it did not investigate the mental health of prospective lawyers." *Applicants*, 1994 WL 923404, at *9.

## Conclusion

[¶33.]    We conclude that Henry has not met his burden of proving good moral character by clear and convincing evidence. The cumulative effect of Henry's lack of candor, poor judgment, criminal record, and unreliability, paired with the unresolved issues regarding the status of Henry's mental health, justify the Board's decision. Thus, we agree with the Board's recommendation and note that Henry may reapply at a future date with the understanding that the Board is allowed to conduct an individual assessment into Henry's fitness to practice law, which includes a reasonable inquiry into Henry's mental health.

[¶34.]    KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.