Michael WAYNE, f/k/a Michael
Wayne Fenney, Appellant,

v.

STATE of Minnesota, Respondent.

No. C9–92–1170.

Supreme Court of Minnesota.

April 9, 1993.

John M. Stuart, State Public Defender, Lawrence Hammerling, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Special Asst. Atty. Gen., St. Paul, and Larry Collins, Waseca County Atty., Waseca, for respondent.

TOMLJANOVICH, Justice.

This is a direct appeal of the order of the district court of Waseca County denying appellant's postconviction petition. The pe-

---

tition sought a new trial based upon newly discovered evidence. The issue presented to this court is whether the postconviction court abused its discretion when it denied the petition. We believe the district court did not abuse its discretion and affirm.

Appellant Michael Wayne ["Wayne"][1] was tried and convicted for the stabbing death of Mona Armendariz ["Armendariz"], a resident of the trailer court in Janesville, Minnesota. At trial, Wayne admitted he had been in Armendariz' trailer, but denied that he had committed the crime. The facts of the case and legal issues on the direct appeal are set forth in *State v. Fenney*, 448 N.W.2d 54 (Minn.1989). We will not repeat them here.

At appellant's original trial, a key defense theory was to implicate Steve Sack ["Sack"] as the murderer. However, when the defense attempted to question Sack as to knife threats he had made to third parties, the trial court ruled that this testimony would not be admissible because there was insufficient evidence serving as a foundation linking Sack to the crime. This court subsequently affirmed this ruling. *Fenney*, 448 N.W.2d at 62.

On October 17, 1990, Carolann Eggert gave a statement to a private investigator concerning Sack. In Eggert's statement and subsequent deposition, she testified that at 2:00 a.m. the night Armendariz was killed, Sack and another Janesville resident Wade Abraham showed up at her home. She testified that Abraham woke her up because he was pounding on the bedroom door of one of her sons, yelling that something terrible had happened. She testified that Sack had a bloody knife, which he washed off in her kitchen sink. She also testified that he had blood on his clothes and that he asked to use her washing machine to clean them. She was upset that he had come in the middle of the night and awakened her. She testified that she told him to leave and that he did, along with Abraham.

On cross-examination, the state explored several problems with the new evidence. Of critical interest to the state was why Eggert waited so long to come forward with the facts of this startling event that had allegedly happened in her home on the night of the murder. Furthermore, two of Eggert's sons had testified to the grand jury and one son testified at the trial that, although Sack had shown up in the middle of the night, he was not covered with blood and that Eggert herself had not been present but rather, had been asleep.

Emphasis was also placed on the size of the knife: Eggert testified that it was 8–12 inches long with a blade 1½ inches wide. She described it as a butcher knife. At trial, however, the pathologist had concluded that the assault and murder could not have been committed with a knife this large. The defendant brought a petition for postconviction review asking for a new trial based upon this new evidence. The district court ruled that a new trial was not in order and denied the petition.

█ This court has set forth a four-part inquiry to be used when deciding whether a new trial should be granted based upon new evidence.

> Generally, in order to obtain a new trial on the ground of newly discovered evidence, the defendant must establish (1) that the evidence was not known to him or his counsel at the time of trial, (2) that his failure to learn of it before trial was not due to lack of diligence, (3) that the evidence is material (or, as we have sometimes said, it is not impeaching, cumulative or doubtful), and (4) that the evidence will probably produce either an acquittal at a retrial or a result more favorable to the petitioner. The decision whether to grant a new trial based upon a claim of newly discovered evidence rests in the first instance with the trial court and we will not disturb the decision unless there is an abuse of discretion.

*Race v. State*, 417 N.W.2d 264, 266 (Minn. 1987) (citations omitted). The parties do not dispute that the trial court properly found that factors (1) and (2) had been met. Thus the issues before us are whether the new evidence is material and whether it

---

1. At the time of the trial and original appeal, Appellant was known as Michael Fenney.

.. 

448

would produce a more favorable result at a new trial.

■ Sack's arrival in Eggert's kitchen on the night of the murder, bloodstained and with a knife, tends to show that he might have been involved with the murder and that he, rather than appellant, might have killed Armendariz. It is evidence which would have been relevant and admissible in the original trial. We have emphasized, however, that on a motion for a new trial based upon newly discovered evidence, the new evidence may not be doubtful, cumulative or impeaching. In this case the evidence is doubtful because it has not come forward in a credible manner from a credible source. Eggert testified that the knife she saw Sack holding was 8 inches or longer. At trial the forensic pathologist testified that the murder weapon probably had a blade about 1½ inches long and about ½ inch wide. Thus, even assuming that Eggert's statement is true, it seems impossible that the knife she saw could have been the murder weapon.

Furthermore, the testimony of Eggert's sons does not comport with their mother's version of what happened the night of the murder. While they both testified that Sack was at their house for a while on the night of the murder, they testified that when Sack was there, their mother was asleep. Furthermore, they did not testify that they saw any blood on his clothes. This conflicting testimony raises further doubts about Eggert's story.

Eggert's delay in coming forward also casts doubt upon her story. She did not come forward with this information until October 1990, over four years after the murder, although she admitted in her deposition that she had followed the trial, read about it in the newspaper and discussed it with her friends. While it is of course natural for witnesses to be hesitant to come forward for a variety of reasons, her not coming forward in this case is not credible. Eggert claims that a man appeared at her home covered with blood, carrying a bloody knife. It does not make sense that someone with this type of potentially exculpatory evidence would sit idly by while the wrong man was being convicted. Not coming forward earlier decreases the credibility of the story. *See, Race,* 417 N.W.2d at 267.

Given the doubtful nature of the new evidence, the trial court was acting in its discretion when it ruled that the third prong of the new evidence test had not been met. A defendant moving for a new trial must also demonstrate that a trial including the new evidence would probably produce an acquittal or a better result than the first trial. Eggert's testimony would almost certainly not change the verdict, given the fact that Eggert's story is incompatible with so much of the other evidence, including the size of the knife and the conflict between her testimony and that of her sons. Thus, while there is some theoretical possibility that the new testimony might alter the jury's verdict, the trial court did not abuse its discretion in deciding that it would not produce a different and more favorable result at a new trial.

■ The public defender received an anonymous letter confessing to the murder. Defendant submits this as an element of new evidence also necessitating a new trial. The author of the letter implies that several murderers conspired to frame Wayne. The author also intimates that he paid the sheriff to stop investigating legitimate leads.

An attorney would not be able to lay the foundation necessary to admit the letter at trial. Thus it would not change its outcome. The trial court properly ruled that the letter did not require a new trial.

The appellant has also raised several issues in his pro se brief. Our review of those issues leads us to conclude that they lack merit, having been decided in the first appeal or having been waived because they were not raised.

The trial court properly denied the motion for a new trial.

Affirmed.