NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0131n.06

No. 10-2104

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

REMY & ASSOCIATES, L.L.C.,
dba Rochester Hills Plaza,

    Plaintiff-Appellant,

v.

WHOLE FOODS MARKETS, INC.,
dba Whole Foods Market; WHOLE FOODS
MARKET GROUP, INC.,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED

*Feb 02, 2012*

LEONARD GREEN, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

BEFORE: MOORE and GRIFFIN, Circuit Judges; and QUIST, District Judge.[*]

GRIFFIN, Circuit Judge.

Plaintiff Remy & Associates, L.L.C. ("Remy") appeals the district court's dismissal of its claim against Whole Foods Markets, Inc. and Whole Foods Market Group, Inc. ("Whole Foods") for breach of a lease agreement. We affirm.

I.

This case arises out of a 1995 lease agreement between Remy and Merchant of Vino Rochester Hills, Inc., a predecessor-in-interest to Whole Foods, for the use of a storefront in a shopping center in Rochester Hills, Michigan. The lease was for a term of twenty years. In 2007,

---

[*]The Honorable Gordon J. Quist, Senior United States District Judge for the Western District of Michigan, sitting by designation.

however, Whole Foods informed Remy that it intended to close its store. Remy filed suit in state court seeking an injunction to prevent Whole Foods from closing the store, a declaration that Whole Foods was required to keep its store open and fully staffed, and money damages. The case was removed to federal court.

After hearing argument in the case, the United States District Court for the Eastern District of Michigan denied Remy's request for injunctive and declaratory relief, concluding that Whole Foods was entitled to close its store after the first 180 days of operation. Then, because Whole Foods had not yet closed its store, the district court dismissed Remy's claim for money damages as premature. Remy did not appeal. Whole Foods subsequently closed its store, but continues to pay rent under the lease.

In 2010, Remy filed this suit against Whole Foods, alleging that Whole Foods breached the lease by failing to pay a $200 "daily charge" for each day that its store has been closed. Whole Foods moved to dismiss, and Remy cross-moved for summary judgment. The district court granted Whole Foods' motion "for all the reasons that have been briefed and argued by the Defendant[.]" It also awarded Whole Foods attorneys' fees and costs pursuant to the terms of the lease.

Remy timely appeals.

## II.

We review de novo a district court's dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). In order to survive a Rule 12(b)(6) motion to dismiss, a complaint need contain "only

enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). We may affirm the district court's dismissal of a plaintiff's claim on any preserved ground, including a ground not relied upon by the district court. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

III.

Remy claims that Whole Foods breached section 6.03 of the lease by failing to pay a $200 daily charge for each day that Whole Foods' store has been permanently closed. The district court, adopting Whole Foods' arguments below, held that Remy was not entitled to the daily charge in the absence of a breach of the lease and that Remy was collaterally-estopped from re-litigating whether Whole Foods' permanent closure of its store was such a breach. On appeal, Whole Foods repeats these arguments. Whole Foods also contends that, if the court were to reach the merits, Remy is not entitled to the daily charge because section 6.03 of the lease does not apply to permanent store closures. Assuming, without deciding, that Remy's claim is not barred by collateral estoppel, we conclude that it fails on the merits.

The lease between Remy and Whole Foods is governed by Michigan law. In construing a contract, our primary responsibility is to determine and enforce the intent of the parties. *Rasheed v. Chrysler Corp.*, 517 N.W.2d 19, 29 n.28 (Mich. 1994). We must examine the contract as a whole, giving effect to all parts and language according to their "ordinary and natural meaning." *City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001) (citation omitted). If the parties' intent is clear from the language of the written agreement, we enforce the parties' intent as expressed

in the writing. *Birchcrest Bldg. Co. v. Plaskove*, 120 N.W.2d 819, 823 (Mich. 1963).

There are two provisions of the lease at issue here. The first, section 27.01, is entitled "Continuation of Business." It provides:

> *CONTINUATION OF BUSINESS*: Tenant shall operate its business within the Leased Premises with a full staff, with a full and complete inventory, on a continuing basis for the entire term of this Lease. In the event Tenant ceases to operate its business within the Leased Premises for ninety (90) days, for reasons within its control, except in the case of remodeling or repair or restoration of the Leased Premises or in the event of a cause beyond the control of Tenant which prohibits the operation of business in the Leased Premises, then Landlord may give Tenant notice that it intends to terminate this Lease upon the expiration of ninety (90) days in the event Tenant fails to reopen for business on a permanent basis within the said ninety (90) days, then Landlord shall have the absolute right to terminate the said lease at any time thereafter. Tenant agrees to initially open for business and operate its business for one hundred eighty (180) calendar days provided, however, nothing herein shall be construed to require Tenant to keep the Leased Premises open for business thereafter.

The second, section 6.03, is entitled "Conduct of Business by Tenant." It provides:

> *Operation of Business*. Notwithstanding any provision to the contrary, Landlord and Tenant agree that to maximize gross sales of other tenants in the Shopping Center, it is necessary that the Shopping Center merchants cooperate to operate the Shopping Center as a cohesive group, with consistent business operations, with minimal variations. Tenant agrees to open and continuously: fully and completely merchandise and operate one hundred percent (100%) of the Leased Premises with a full staff of employees during all business hours, as may be established by Landlord. Tenant shall be required to remain open during additional or late night business hours as may be directed during the term of the Lease and additional or late night business hours as may be directed in connection with special Shopping Center promotional events and holiday operations. It is acknowledged and agreed that the failure by Tenant to remain open on the days and at the times designated by Landlord shall interfere with the operation of the Shopping Center as a cohesive group of merchants and shall reduce the Tenant's Gross Sales, together with the gross sales of other Tenants in the Shopping Center. In addition to such other activities as may be necessary to compensate for lost revenue and interference with the operation of the Shopping Center, it shall be necessary to expend additional funds for advertising

and promotional events. Therefore, it is hereby agreed that for each day Tenant fails to remain open during the hours designated by Landlord, Tenant shall pay to the Landlord a sum of Two Hundred ($200.00) Dollars per each day Tenant fails to remain open during designated hours. It is expressly acknowledged and agreed that the foregoing sum is a reasonable estimate of damages which would otherwise be difficult, if not impractical, to ascertain. . . . In addition to the requirement that Tenant pay said sum to Landlord, the failure to remain open on the days and at the hours designated shall constitute an Event of Default under this Lease and entitle Landlord to pursue the remedies provided for herein, . . . including, without limitation, the right to secure injunctive relief, requiring Tenant to remain open on such days and at such hours as may be designated.

*Tenant agrees to open for business not less than ten (10) hours a day except on Sundays.

Remy claims that section 6.03 applies to permanent store closures because the language of section 6.03 makes no distinction between temporary and permanent closures, but simply refers to the "failure to remain open on the days and at the hours designated." We disagree. Section 6.03's repeated use of the word "designated" makes clear that the provision is intended to regulate the manner in which Whole Foods operates its store, i.e., to prevent Whole Foods from conducting its business on irregular days and at irregular times. Indeed, the stated purpose of section 6.03 is "to *operate* the Shopping Center as a cohesive group" with "consistent business *operations*, with minimal variations." (Emphases added.) Nothing in section 6.03 suggests that the "days and hours designated" requirement is intended to apply in the event that Whole Foods permanently closes its store.

Moreover, if we were to read the "days and hours designated" requirement as applying to permanent store closures, section 6.03 would conflict with section 27.01. Whole Foods cannot, after all, be permitted to permanently close its store while also being required to keep its store open on

designated days and at designated times. Because, under Michigan law, a "court must strive to harmonize apparently conflicting terms or clauses" in a contract, *Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortg. Capital*, 274 F.3d 1085, 1092 (6th Cir. 2001) (citing *Fresard v. Mich. Millers Mut. Ins. Co.*, 327 N.W.2d 286, 289 (Mich. 1982)), and because the conflict between section 27.01 and section 6.03 is readily resolved by avoiding Remy's expansive interpretation of section 6.03's "days and hours designated" requirement, we find Remy's interpretation untenable.[1]

Remy also argues that section 6.03's "days and hours designated" requirement must apply to permanent store closures because otherwise Whole Foods could prevent a competitor from moving into the space and competing with nearby Whole Foods stores without any negative consequences. However, the fact that Whole Foods closed its store does not give Whole Foods the competitive windfall that Remy alleges. Whole Foods continues to pay rent, even though it is no longer using the premises. Moreover, the only reason Whole Foods continues to control the premises is because Remy has not exercised its right to terminate the lease. Because Remy retains that power, any benefit to Whole Foods is virtually nonexistent. The moment Whole Foods' control of the premises excludes a competitor will presumably be the moment that Remy will terminate the lease in favor of that competitor in accordance with its stated preference for having an operational tenant.

Finally, Remy contends that because the harm resulting from Whole Foods' failure to abide

---

[1]Remy claims that there is no longer a conflict between these provisions because in 2008 the district court held that section 6.03 did not require Whole Foods to keep its store open. However, the fact that the district court resolved the question of whether Whole Foods was obligated to keep its store open does not change the language of the lease.

by section 6.03's requirement to be open on designated days and at designated times is the same regardless of whether the store closure is temporary or permanent – that is, it will "reduce . . . the gross sales of other Tenants in the Shopping Center" – the remedy should also be the same. We do not agree. Section 27.01 provides that the remedy for Whole Foods' permanent closure of its store after the first 180 days of operation is that the "Landlord shall have the absolute right to terminate the said lease at any time thereafter." If Remy was also entitled to the $200 daily charge in the event that Whole Foods permanently closed its store, then section 27.01, section 6.03, or some other section, would have clearly said so. Moreover, although we find the lease to be clear, because Remy drafted the lease, ambiguities in its language regarding the scope of section 6.03 should be construed in favor of Whole Foods. *Klapp v. United Ins. Gr. Agency, Inc.*, 663 N.W.2d 447, 460 (Mich. 2003). Accordingly, we hold that Remy is not entitled to the daily charge specified in section 6.03 on account of Whole Foods' permanent closure of its store pursuant to section 27.01.

IV.

For these reasons, we affirm the judgment of the district court. We remand to the district court for an award of appellate attorney fees and costs.